TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20, Hiep Binh Chanh Ward
Thu Duc City, Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; CITY OF SEASIDE; CITY OF MARINA; JEANNETTE PACIONI; CHRISTI McDONALD, individually and as Deputy County Counsel; KATY GRANT, as Court Executive Officer; TINA NIETO, as Sheriff-Coroner; RANDY HOPKINS, as Chief of Police, Marina Police Department; NICHOLAS BORGES, as Chief of Police, Seaside Police Department; TARA HIGGINS; SCOTT ERDBACHER; SHANE KELLY; ROLAND SOLTESZ; ERIN BOYLAN; DAVID MIGDAL; EVAN GEORGE; SUSAN BLITCH; ALEX CARDINALE; RAYMOND BUENAVENTURA; OFFICE OF THE PUBLIC DEFENDER; DISTRICT ATTORNEY OF MONTEREY COUNTY; and DOES 1–20,<br><br>Defendants. | Case No.: 5:26-cv-12456-PCP<br><br>SECOND (RENEWED) EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (MEDICATION CONTINUITY ONLY)<br><br>**EMERGENCY — EX PARTE**<br><br>(Fed. R. Civ. P. 65; 42 U.S.C. § 1983)<br><br>Assigned to: Hon. P. Casey Pitts |

PLEASE TAKE NOTICE that Plaintiffs Terrance Walker and ward A.B. submit this SECOND (RENEWED) EMERGENCY EX PARTE APPLICATION for a Temporary Restraining Order under Federal Rule of Civil Procedure 65 and 42 U.S.C. § 1983 — narrowed, following this Court's October 29, 2026 Order (Dkt. No. 12), to a single form of relief: an order enjoining Defendants from interfering with the continuity of psychotropic and other medications currently prescribed for A.B. by his treating providers under the care plan established in Monterey County Superior Court Case No. 26CA000005. This application is an emergency: prescribed psychiatric medication is being withheld from a mentally ill, incompetent ward in custody as of the filing of this application, with documented prior decompensation when the same withholding occurred. This application is supported by the concurrently filed Supplemental Declaration of Terrance Walker under 28 U.S.C. § 1746, the matters of public record noticed herein, Exhibit 1 (screenshot of the Monterey County Superior Court public portal for Case No. 26CR000939, name redacted for medical privacy), Exhibit 2 (Petition for Writ of Habeas Corpus (Emergency — Medical) filed October 22, 2026, in Monterey County Superior Court, the ward's name redacted therein for medical privacy, as noted on the exhibit's cover page), Exhibits 3, 4, and 5 (contemporaneous written records: the Monterey County Sheriff's Office Custody Division ADA Coordinator's September 28, 2026 email confirming an arrest on dismissed orders and a 'No File' release; appointed counsel's March 21, 2026 email acknowledging the IST determination 'does obviously inform the full picture'; and Plaintiff's August 14, 2026 notice memorializing threats to refile stale charges — the ward's name and email redacted therein for medical privacy, as noted on the exhibits' cover pages), the concurrently filed Proposed Order and Certificate of Concurrent Service, and the papers previously filed in support of the application denied at Dkt. No. 12. No counsel of record has appeared for any Defendant in this action; consistent with Rule 65(b)(1)(B), Plaintiffs have served all Defendants concurrently with this filing by electronic mail.

## I. THE OCTOBER 29 ORDER ADDRESSES ONLY THE PROSECUTION-STAY RELIEF

This Court's Order Denying Motion for Temporary Restraining Order (Dkt. No. 12) rests entirely on *Younger v. Harris*, 401 U.S. 37 (1971), and *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69

(2013), holding that Plaintiff had not shown the exceptional circumstances required to enjoin 'eight pending California state criminal cases.' The Order is expressly and entirely a ruling on the relief that would stay state-court prosecutions. It does not address — and by its terms does not decide — the medical-continuity relief renewed here, which asks this Court to order county custodial officials not to interfere with existing prescriptions. That relief enjoins no state-court proceeding, touches no docket, and interferes with no prosecution.

## II. WHAT THIS CASE IS — AND WHAT IT IS NOT

Plaintiffs state plainly, at the outset, what this case is not: it is not a request that this Court supervise, stay, or second-guess any prosecution. The relief sought here runs against county jail officials and their medication practices, and only against them. What this case is, is narrower and starker: a mentally ill ward, adjudicated incompetent to stand trial on February 5, 2026, is being held in a county jail while the psychiatric medication prescribed under his court-supervised care plan is withheld. The proposition that persons adjudicated incompetent to stand trial may not be prosecuted is not contested by anyone; it is black-letter law. *Pate v. Robinson*, 383 U.S. 375 (1966); *Godinez v. Moran*, 509 U.S. 389 (1993); *People v. Pennington*, 66 Cal.2d 508 (1967); *Maxwell v. Roe*, 606 F.3d 561 (9th Cir. 2010). Incompetents are not prosecutable. That proposition requires no adjudication from this Court; it requires only that the record be read as it stands.

The reason it requires even that much is the anomaly at the center of this record: not one of the at least eleven attorneys who have appeared on A.B.'s matters since February 2026 has asserted his adjudicated incompetence in any court, notwithstanding that the County's own Behavioral Health department verified on April 27, 2026 that his assigned office cannot represent him. The office's own attorney, Alex Cardinale, acknowledged as much in writing on March 21, 2026 (Exhibit 4): the IST determination 'does obviously inform the full picture,' yet she would be 'standing back and letting that process happen as is ethically appropriate.' Every rotation since has been unexplained, and the only reason ever communicated to Plaintiff for any rotation was Plaintiff's request that counsel assert the IST stay. How many attorneys must an incompetent ward cycle through — ten, twenty, thirty — before the state remedial system is acknowledged futile? The Ninth Circuit

measures structural failure of counsel without any showing of prejudice. *United States v. Cronic*, 466 U.S. 648 (1984) (presumed prejudice at critical stages); *Garza v. Idaho*, 139 S. Ct. 738, 747–48 (2019) (no prejudice showing required where counsel's failure is structural); *Maples v. Thomas*, 565 U.S. 266, 283–84 (2012) (systemic attorney failure excuses reliance on state remedies). At some point — and this record shows the point reached — the question answers itself.

Plaintiffs present this record for a limited purpose: not to renew the denied prosecution-stay relief, but because it establishes the context in which the County operates the jail whose medication practices are challenged here. The Governor of California has publicly identified Monterey County as a failing CARE Act jurisdiction placed in the state's 'ICU' accountability unit (March 2, 2026); the County's own Sheriff's Office, in writing, confirmed the September 11, 2026 arrest of this ward on court orders this Court's Department 10 had dismissed a month earlier, his release four days later as a 'No File,' and the absence of any record establishing an active warrant (Exhibit 3); and contemporaneous written notices memorialized threats to refile stale charges against the ward while his incompetency adjudication stood of record (Exhibit 5). *See* Dombrowski v. Pfister, 380 U.S. 479, 482 (1965) (arrests on warrants later vacated for lack of probable cause, with continued threats of prosecution under the same statutes, held to justify federal intervention); *Younger*, 401 U.S. at 47–49 (describing that showing as 'bad faith' and 'harassment'); *Allee v. Medrano*, 416 U.S. 802, 812 (1974) ('pervasive pattern of intimidation' satisfies the bad-faith exception); *Llewelyn v. Oakland County Prosecutor's Office*, 402 F. Supp. 1379, 1388–89 (E.D. Mich. 1975) (prosecutor's campaign of 'guerilla warfare' and warrant-shopping across eight judges); *Timmerman v. Brown*, 528 F.2d 811 (4th Cir. 1975); *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (bad faith means 'a prosecution has been brought without a reasonable expectation of obtaining a valid conviction'); *McMurray v. Sheahan*, 927 F. Supp. 1082, 1090 (N.D. Ill. 1996) (county liable for false arrests where it operates no system to check the validity of warrants). Plaintiffs do not ask this Court to apply these authorities to stay any prosecution; they are cited because the County's own records show the pattern those authorities describe, and because that pattern is the milieu in which the jail's medication practices — the sole subject of this application — must be understood.

Plaintiffs further recognize that the evidentiary record before the Court, while now including the exhibits attached to this application, is not exhaustive. Additional exhibits have been gathered and will be presented at the Order to Show Cause hearing and in opposition to any dispositive motion; nothing in this application depends on material the Court has not seen, and the relief requested turns on facts already established by the County's own filings, registers, and written correspondence.

**III. YOUNGER DOES NOT BAR THE MEDICAL-CONTINUITY RELIEF**

*Younger* abstention governs federal interference with ongoing state judicial proceedings. It has no application to an injunction preserving the status quo of a pretrial detainee's medical care, for two independent reasons.

**First**, conditions-of-confinement and medical-care claims are core § 1983 territory: *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (prisoners may bring § 1983 challenges to prison conditions and medical care); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs violates the Eighth Amendment, applicable to pretrial detainees through the Fourteenth Amendment, *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). The defendants to this relief are the County and the Sheriff-Coroner, whose jail staff control medication administration; no state judge, prosecutor, or criminal docket is enjoined, supervised, or even mentioned in the operative paragraph.

**Second**, even in the criminal-process setting itself, the Supreme Court has approved federal injunctive relief that is 'not directed at the state prosecutions as such' and that 'could not prejudice the conduct of the trial on the merits.' *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975). The renewed relief satisfies that test exactly: it is directed at jailers and their medication practices, not at any prosecution, and preserving a detainee's prescribed medication regimen cannot prejudice any trial, competent or otherwise. A federal court's order that jail officials not withhold medication lawfully prescribed by treating providers neither stays a state proceeding nor expresses any opinion about one. *Younger* simply does not apply.

**IV. THE RECORD — AND THE GOVERNMENT'S OWN MEDICAL LITERATURE — SUPPORT IMMEDIATE RELIEF**

From the prior declarations and the Supplemental Declaration filed concurrently: A.B. is a mentally ill ward adjudicated incompetent to stand trial (Case No. 26CR000939, February 5, 2026), with a CARE Act care plan (Case No. 26CA000005) establishing prescribed psychotropic medications. During the March 2026 and September 2026 detentions, prescribed medications were withheld; the September deprivation was followed by acute psychological decompensation and severe physical sickness. Prescribed medications are again being withheld as of the filing of this application — after the October 29 Order, which did not disturb or address this claim. An emergency state habeas petition on medication continuity (GreenFiling ID 15507895), filed October 21, 2026, has been held in abeyance for ten days with no ruling; that petition, redacted to protect medical privacy, is attached as Exhibit 2 and details the County's own written admissions of non-coordination, the four consecutive days of unanswered written demands, and the September 2026 decompensation. Every day of delay compounds an ongoing medical emergency that no retrospective remedy can repair.

The premise of the current custody is documented by the ward himself, in his own words. In a message to Plaintiff dated October 27, 2026, sent through the Monterey County Jail's inmate messaging system, the ward wrote: 'The arresting officers didn't realize that the NCO was terminated until after I was booked at the seaside police office.' (Quoted in part; the full message is deliberately withheld from this filing so as not to encroach on pending state proceedings, and the ward's name is redacted for medical privacy.) Plaintiff has already requested the records capable of verifying this account: by email of October 21, 2026, Plaintiff served the City of Seaside and its Chief of Police with a California Public Records Act request and emergency evidence-preservation demand for the arresting officers' body-worn camera footage, dispatch and CAD records, and order-verification records concerning the October 15, 2026 arrest — contemporaneous video and audio that can be presented at a hearing on this application. The sequence the ward describes is the September sequence repeated: custody on a void premise, discovered only after booking — and, once the premise collapsed at the police station, a different charge selected in its place, as the County's own register corroborates (booking October 15, 2026; complaint October 19, 2026; amended complaint and affidavit October 20, 2026). The medication consequences of that custody,

not the charge, are the subject of this application.

The September 2026 episode warrants emphasis, because it was the first of two abrupt interruptions in two months — and because no prosecution was ever its subject. That interruption was caused by an arrest with no probable cause: the County's own Sheriff's Office confirms the arrest was premised on court orders dismissed a month earlier, and the ward was released four days later without any charge ever being filed — a 'No File' (Exhibit 3). He was held for four days with zero legal basis for the arrest and without the prompt judicial probable-cause determination the Fourth Amendment requires. *Gerstein v. Pugh*, 420 U.S. 103, 114–25 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–58 (1991) (48-hour benchmark). No complaint was filed; no arraignment occurred; no docket exists. *Younger* therefore has no application whatsoever to that episode — it was custodial conduct, pure and simple, unattached to any state judicial proceeding — and it supplies the first half of a two-month pattern: twice in two months, Defendants' own conduct has abruptly severed this ward's psychotropic regimen, and twice the predictable result has followed.

The count of violations now stands concrete — and none of them touches what *Younger* forbids. **(1) Two *Gerstein* violations** (September 11–15, 2026; October 15–19, 2026): two four-day detentions without the prompt judicial probable-cause determination the Fourth Amendment requires. **(2) Two arrests without probable cause** (September 11, 2026, on court orders dismissed a month earlier; October 15, 2026, on a no-contact order the officers themselves did not know had terminated until after booking) — the County's own Sheriff's Office confirms the first (Exhibit 3), and the ward's own words confirm the second. **(3) Ten violations of the right to have his adjudicated incompetence presented**: ten of the at least eleven attorneys placed on his matters since February 2026 have held the IST adjudication and declined to assert it in any court, with no motion under Penal Code § 1370.01 filed by any of them. Every one of these violations involves a situation in which there is no prosecution and can be none: the September custody ended as a 'No File' with no complaint ever filed; the October custody's premise collapsed at the police station and was replaced with a different charge precisely because the original basis did not exist; and each IST-presentation failure occurred outside any adjudication, because no motion was ever filed and no proceeding ever

addressed competency at all. *Younger* protects ongoing state judicial proceedings from federal interference; it does not immunize custodial detentions unsupported by probable cause, nor a county's practice of rotating counsel through an incompetent ward's matters so that his adjudicated status is never presented. These violations are not the subject of this application — but they are its backdrop, and they measure the futility of the state remedial system for the claim that is.

The harm is not speculative; it is the subject of the federal government's own published medical literature, which this Court may notice under Federal Rule of Evidence 201(b)(2) (facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'). *See United States ex rel. Robinson Rancheria v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (judicial notice of public records from authoritative sources); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of a description of Lyme disease published on the website of the Centers for Disease Control and Prevention); *Askew v. Sec'y of Health & Human Servs.*, No. 10-767V, 2012 WL 2061804 (Fed. Cl. 2012) (taking judicial notice of the symptoms of an unusual medical condition published online by the National Institutes of Health). The National Institutes of Health's National Center for Biotechnology Information (ncbi.nlm.nih.gov) publishes, on the federal government's own website:

• *Antidepressant Withdrawal Syndrome*, NCBI Bookshelf NBK598502 (Therapeutics Letter 112), available at https://www.ncbi.nlm.nih.gov/books/NBK598502/, reporting that one to two-thirds of patients experience at least one new symptom upon abrupt discontinuation — anxiety, crying, dizziness, insomnia, irritability, tremor, and sensory disturbances among them — and cautioning that recurrent depressive symptoms or increased suicidality following an abrupt stop may represent withdrawal or re-emergence of the underlying condition; and

• *Antidepressant Withdrawal Syndrome — Update*, NCBI Bookshelf NBK618768 (2025), available at https://www.ncbi.nlm.nih.gov/books/NBK618768/, recording that '[t]he intensity of physiological symptoms is directly proportional to the duration of drug administration and the abruptness of withdrawal,' that withdrawal symptoms 'can manifest after stopping or reducing a dose, or even after missing doses,' and that protracted withdrawal 'can be so debilitating that people lose jobs,

relationships, or die by suicide.'

Abruptly severing a mentally ill ward's psychotropic regimen is therefore not a neutral custodial act. It is, by the federal government's own published medical consensus, a recognized precipitant of withdrawal, decompensation, and suicidality — imposed here on a ward whose prior deprivation produced exactly that result, and imposed again after this Court's order left the claim unaddressed.

**V. LEGAL STANDARD AND LIKELIHOOD OF SUCCESS**

An ex parte TRO requires immediate irreparable injury, a likelihood of success or serious questions going to the merits, and a balance of hardships and public interest favoring relief. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). **Irreparable injury is ongoing and undisputed**: a mentally ill incompetent ward is being denied prescribed psychiatric medication in custody, with documented history of decompensation when the same denial occurred before, and with the federal government's literature confirming the grave risks of abrupt discontinuation. **Likelihood of success is strong**: the deliberate-indifference standard is objective as to pretrial detainees (*Kingsley*, 576 U.S. at 396–97), and the pattern here — repeated withholding of prescribed medication with known prior decompensation — satisfies it. **The balance of hardships and public interest** favor a status-quo-preservation order: the relief neither prescribes nor administers medication, nor orders any affirmative medical act; it simply forbids interference with prescriptions already issued by treating providers. Pursuant to Rule 65(c), Plaintiffs request a nominal bond of $100.

**WHEREFORE**, Plaintiffs respectfully request that this Court: (1) issue a Temporary Restraining Order, effective immediately and until the hearing on the Order to Show Cause (and in no event longer than fourteen days under Rule 65(b)(2)), enjoining Defendants, their agents and employees, from interfering with, withholding, or disrupting the administration of any psychotropic or other medication currently prescribed for A.B. by his treating providers under the care plan established in Monterey County Superior Court Case No. 26CA000005, and directing reasonable steps to facilitate continuity of those prescribed medications during A.B.'s custody; (2) set an expedited hearing on the preliminary injunction; (3) set bond at a nominal $100; and (4) grant such other relief as the Court

deems just. Plaintiffs expressly do not renew, in this application, the prosecution-stay relief denied at Dkt. No. 12.

Dated: October 30, 2026 (Indochina Time)

Respectfully submitted,

/s/ Terrance Walker

Terrance Walker, Pro Se

Next Friend for ward A.B.