TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20, Hiep Binh Chanh Ward
Thu Duc City, Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF MONTEREY; CITY OF SEASIDE; CITY OF MARINA; JEANNETTE PACIONI; CHRISTI McDONALD, individually and as Deputy County Counsel; KATY GRANT, as Court Executive Officer; TINA NIETO, as Sheriff-Coroner; RANDY HOPKINS, as Chief of Police, Marina Police Department; NICHOLAS BORGES, as Chief of Police, Seaside Police Department; TARA HIGGINS; SCOTT ERDBACHER; SHANE KELLY; ROLAND SOLTESZ; ERIN BOYLAN; DAVID MIGDAL; EVAN GEORGE; SUSAN BLITCH; ALEX CARDINALE; RAYMOND BUENAVENTURA; OFFICE OF THE PUBLIC DEFENDER; DISTRICT ATTORNEY OF MONTEREY COUNTY; and DOES 1–20,<br><br>Defendants. | Case No.: 5:26-cv-12456-PCP<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF SECOND (RENEWED) EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (MEDICATION CONTINUITY ONLY)**<br><br>(Re: Dkt. No. 18, filed November 2, 2026, in response to Dkt. No. 15)<br><br>Assigned to: Hon. P. Casey Pitts |

Defendant County of Monterey filed its Limited Response (Dkt. No. 18) approximately thirty minutes after the deadline this Court set in its October 30 Order (Dkt. No. 15), and without ever seeking an extension. The response engages none of the medical record. It raises three threshold objections — service, evidentiary sufficiency, and standing — each of which is answered below. What remains after those answers is a filing whose only merits-adjacent sentence concedes the

claim it is sworn to oppose.

**I. THE COUNTY'S OWN WORDS SUPPLY THE DELIBERATE INDIFFERENCE IT COULD NOT REBUT.** The County states: "The County has not had an opportunity to investigate Plaintiff's allegations concerning the withholding of medications from A.B., an adult whom Plaintiff represents is in County custody." (Dkt. No. 18 at 2.) Consider what that sentence admits. The County is the custodian — the ward is held in the Monterey County Jail under the County's own Sheriff, booking no. FN2607370 (Dkt. No. 13, Ex. 2 at 2). Fourteen days of written demands for medication continuity were served on the County's own ADA Coordinator beginning October 18, 2026 (Dkt. No. 13, Ex. 2 at 4; Dkt. No. 13-1 ¶ 4). The County's response, filed on the fourth business day after this Court ordered it, contains no denial that the medications are prescribed, no denial that they are withheld, no evaluator, no evaluation date, and no medical fact of any kind. Its position is that it has not looked. A custodian that does not look, in the face of its own employee's written non-confirmation ("cannot independently confirm whether Sun Street/Hope House was contacted or whether medications have been provided," Dkt. No. 13, Ex. 2 at 4), supplies the knowledge element of deliberate indifference out of its own mouth. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Duvall v. County of Kitsap*, 260 F.3d 1164, 1170–71 (9th Cir. 2001). The gravity of the specific harm is the federal government's own published position: antipsychotic medication is "the gold-standard treatment for psychotic episodes and disorders" (Psychosis, StatPearls, NCBI Bookshelf NBK546579); its goal is "to alleviate symptoms and restore the patient's normal functioning" (Schizophrenia, StatPearls, NCBI Bookshelf NBK539864); patients who improve "should maintain their treatment regimen" (Risperidone, StatPearls, NCBI Bookshelf NBK459313); discontinuation raises relapse risk (Antipsychotic Medications, StatPearls, NCBI Bookshelf NBK519503); and abrupt interruption produces withdrawal and decompensation (Dkt. No. 13 at 8–9, citing NCBI Bookshelf NBK598502, NBK618768 (2025)) — all judicially noticeable under Fed. R. Evid. 201(b)(2).

Of course, any party can announce that there is no evidence — provided it first refuses to look. What is before this Court is not an absence of evidence; it is the County's refusal to acknowledge

its own documents: the register adjudicating incompetence and accepting diversion (Dkt. No. 13, Ex. 1); the County's verified concession of conflict (Dkt. No. 13, Ex. 5 at 2); its own employee's county-letterhead confirmation of the September custody, the 'No File,' and the absence of any warrant record (Dkt. No. 13, Ex. 3); the state habeas record of unanswered medication demands (Dkt. No. 13, Ex. 2); and the uniform PC1368 suspensions of October 28 (Dkt. No. 14, Exs. 6–7). A party that will not read its own record does not create an evidentiary gap; it creates evidence of itself not looking. And that is precisely the conduct the Governor of California identified on March 2, 2026, when he named this County among the jurisdictions substituting excuses for execution: the County's response offers failure ('no opportunity to investigate' its own jail) and excuses (service, standing, schedule) in place of the verification that one phone call to its own ADA Coordinator would have completed — a phone call that would have taken less time than all of the excuses the County typed in its response.

**II. MEDICATION IS THE INSTRUMENT OF THE STATE'S OWN COMPETENCY PROCESS, AND THE DEPRIVATION CORRUPTS IT.** The Supreme Court recognizes medication as the means by which incompetence is restored. *Sell v. United States*, 539 U.S. 166, 180 (2003). All eight dockets now stand on the competency track, reports calendared for December 2, 2026 (Dkt. No. 14, Exs. 6–7), and competency is "the defendant's present ability to participate in the legal process," assessed on psychiatric treatment records (Psychosis and Criminal Responsibility, StatPearls, NCBI Bookshelf NBK537064). That present ability cannot be measured while the government suppresses the treatment that produces it. A competency evaluation conducted while the evaluator's own custodian withholds the prescribed regimen does not measure the patient's capacity; it measures the symptoms of an untreated illness the government itself induced. The County should be asked to identify, by name and citation, the professional standard under which one conducts a competency evaluation of a patient the evaluator has left unmedicated. There is none, and the question answers itself. If the County's "pending evaluation" position lurks beneath its silence, it concedes knowledge from booking, identifies an evaluation that its own documents show does not exist, and amounts to an admission of fourteen days of unexplained delay of known, prescribed care. Who is the evaluator? What is

the evaluation's date? What were its findings?

**III. THE SERVICE OBJECTION IS WAIVED, CURABLE, AND IRRELEVANT TO THE EMERGENCY.** The County's lead threshold argument is that it was never served — yet its response demonstrates that it received this Court's October 30 Order "via email" (Dkt. No. 18 at 3), reviewed the docket, filed a responsive paper, and asked this Court for relief. Plaintiff served the Order as the Court directed: transmitted to County Counsel and thirty-two officials by email nine minutes before the Court's 3:00 p.m. deadline on October 30, 2026, as the transmittal and the docket reflect. A party cannot invoke a court's jurisdiction to oppose, demand a ruling from it, and in the same breath disavow the court's papers; the response itself is the waiver. The County then concedes the governing principle: "Rule 65 permits courts to consider emergency injunctive relief before formal service of process has been completed." (Dkt. No. 18 at 3.) Four authorities foreclose the objection. (1) Rule 65(b)(1) itself authorizes a temporary restraining order "without written or oral notice to the adverse party" — a standard satisfiable, by definition, before Rule 4 service has even been attempted, upon specific facts in an affidavit and a written certification of notice efforts, both of which are of record here (Dkt. No. 13-1; Dkt. No. 14-1). (2) *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3–4 (2d Cir. 1979), directed issuance of an ex parte TRO where the application was filed with the complaint precisely because "service of process had not been effected," such orders being indispensable to preserving a state of affairs in which the court can provide effective final relief. (3) *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974), holds ex parte TROs "no doubt necessary in certain circumstances," their function being "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"; *accord Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). (4) Rule 65(d)(2) binds parties, their officers, agents, and those in active concert "who receive actual notice of the order" — binding effect runs on actual notice, not on the summons, and the County's own responsive filing is that actual notice. Having conceded the governing rule to this Court in the same document that pleads its violation, the County is estopped from demanding denial on the defect it admits is harmless: judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a

contradictory argument to prevail in another phase," and exists "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). Plaintiff will complete Rule 4(j)(2) service on the County — delivery to its chief executive officer and clerk, with certified mailing dispatched through Plaintiff's United States mailing provider — within seven days of this reply; the Court may so order. A curable, self-identified paperwork defect, confessed in the same breath as the rule that makes it harmless to emergency relief, is not a reason to let a documented medication deprivation continue; it is a reason to calendar service and grant the Order.

**IV. THE MERITS RECORD THE COUNTY STILL WILL NOT ANSWER.** Three items, each sworn or admitted, remain unanswered after the County's response. First, Plaintiff has sworn, twice, under penalty of perjury, that the medications remain withheld (Dkt. No. 13-1 ¶ 3; Dkt. No. 14-1 ¶ 3) — the County's response does not say otherwise; it says only that the County has not checked. Second, the County's own ADA Coordinator admitted in writing on October 20, 2026, that he could not confirm that the residential program was contacted or that any medication was provided (Dkt. No. 13, Ex. 2 at 4) — the jail staff's position, reduced to county letterhead, is that it did not research the issue before or, apparently, after. Third, any confidentiality objection expired on September 29, 2026, when the ward executed a written Authorization for Release of Records (Dkt. No. 13, Ex. 2, Attachment 4) — yet fourteen days of demands, a state habeas petition, and this Court's own order later, the County still does not answer the one question its own jail could answer in an afternoon: is A.B. receiving his prescribed medication? A litigant that knows the answer and declines to give it to the tribunal is not exercising caution; it exhibits a lack of candor.

**V. STANDING IS ANCHORED IN WHITMORE — NOT IN THE CARE ACT — AND THE CITED AUTHORITY DOES NOT REACH THIS RECORD.** Plaintiff's authority to sue in this Court does not derive from the CARE Act, from the statutory-supporter designation, or from any California statute. It derives from the common-law next-friend doctrine, under which a person may litigate on behalf of one who cannot litigate for himself. *Whitmore v. Arkansas*, 495 U.S. 149, 163–66 (1990). *Whitmore* requires that the real party cannot litigate for himself and that

the next friend is dedicated to his interests. The first factor is not alleged but adjudicated: on February 5, 2026, the Monterey County Superior Court found A.B. incompetent to stand trial (Dkt. No. 13, Ex. 1). The CARE Act record is not the source of standing; it is corroboration of both factors — the ward's adjudicated condition and Plaintiff's documented dedication as father, initiating petitioner, and statutory supporter (Dkt. No. 13-1 ¶¶ 2, 6; Dkt. No. 14-1). If the County's response reads Plaintiff's standing as a statutory-supporter argument, it is answering an argument no one made; no defect in the CARE Act scheme could defeat a standing that does not rest on it. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008), and *Johns v. County of San Diego*, 114 F.3d 874, 876–77 (9th Cir. 1997), stand for the unremarkable proposition that a layman may not litigate for another adult who is able to litigate for himself; neither addresses a judicially adjudicated incompetent whose court-appointed counsel has written that she will be "standing back and letting that process happen as is ethically appropriate" (Dkt. No. 13, Ex. 4) — counsel whose office the County's own verified filing concedes cannot represent him, but which has still filed appearances on his cases and on which conflicted counsel remains. Plaintiff expressly offers, now, to consent immediately to the appointment of a guardian ad litem upon the Court's own motion under Fed. R. Civ. P. 17(c), and to cooperate with any candidate the Court designates, without prejudice to the next-friend showing above; if the Court harbors any doubt, that — and not denial of emergency relief on a curable technicality while the deprivation continues — is the answer.

The County's repeated reference to A.B. as "an adult" (Dkt. No. 18 at 2–4) should be seen for what it is: a word chosen to shrink a man the County's own courts have already adjudicated. He is not merely an adult; he is an adjudicated-incompetent ward, a respondent in a court-supervised CARE Act program, found incompetent to stand trial in the County's own files (Dkt. No. 13, Ex. 1; Dkt. No. 13, Ex. 2 at 5–6), with his status catalogued in the County's own verified filing. If the County truly did not know these facts about a man in its own jail, it could have verified them by the same single phone call it declined to make. A party does not diminish its own court files by choosing smaller words for the person they describe.

**VI. THE COUNTY'S RESPONSE IS THE GOVERNOR'S DIAGNOSIS, CONFIRMED.** On March 2, 2026, the Governor of California, identifying Monterey County by name among ten failing CARE Act jurisdictions, said of counties like this one: "We will not accept failure and excuses when lives are on the line." The County's response is the complete formula, restated in the County's own voice. The failure: "The County has not had an opportunity to investigate" the medication status of a man its own jail is holding — a verification its own ADA Coordinator could have completed with one phone call, and that fourteen days of written demands made unavoidable (Dkt. No. 13, Ex. 2 at 4). The excuses: service, standing, and the schedule this Court itself set. And the life on the line: A.B.'s, three weeks into a documented deprivation that the federal government's medical literature describes in terms of relapse, withdrawal, and suicidality (Dkt. No. 13 at 8–9). The County has offered the Governor's exact sentence back to this Court — failure, plus excuses, with a life on the line — and asked the Court to accept it.

**VII. RELIEF, INCLUDING PRODUCTION OF THE WARD.** The County's response denies no fact in the medical record; it announces that the County has not investigated its own jail. The Eighth Amendment — and the Fourteenth Amendment's objective standard for pretrial detainees — does not permit such tomfoolery in the face of documented suffering. *Estelle*, 429 U.S. at 104; *Kingsley*, 576 U.S. at 396–97. The fastest verification available to the County — and now to this Court — is the ward himself: the jail already operates the video infrastructure through which A.B. communicates, and through which this Court conducts remote proceedings. Plaintiff respectfully asks that the Court: (a) grant the Temporary Restraining Order as prayed in Dkt. No. 13, effective immediately; (b) order Defendants to produce A.B. by live video conference at any hearing on this application — and weekly thereafter while the Order is in effect — so that the Court may take his testimony under oath as to the care he is actually receiving: he is the one percipient witness to the dispositive fact other than the custodian that refuses to answer, and his sworn account of what medication he is given, when he last received it, and who administers it resolves in one afternoon the factual question the County has declined to resolve in fourteen days, while permitting the Court to observe his condition firsthand; (c) direct completion of Rule 4(j)(2) service within seven days; (d) set the earliest practicable hearing; and (e) maintain the $100 bond. Every hour this

Court spends on the County's evasions is an hour of judicial resources spent to avoid a phone call the County's own obligations required it to make. The deprivation is ongoing, documented, and compounding; the ex parte showing is complete and unrebutted on every medical particular.

The facts stated in this Reply are drawn from the sworn declarations and exhibits already of record (Dkt. No. 13-1; Dkt. No. 14-1; Dkt. No. 13, Exs. 1–5; Dkt. No. 14, Exs. 6–7) and from Defendant's own Limited Response (Dkt. No. 18), all incorporated by reference.

Dated: November 3, 2026 (Indochina Time)

Respectfully submitted,

/s/ Terrance Walker

Terrance Walker, Pro Se

Next Friend for ward A.B.