TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20,
Hiep Binh Chanh Ward, Thu Duc City,
Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B.,
Plaintiffs,
v.
COUNTY OF MONTEREY; CITY OF SEASIDE; CITY OF MARINA; JEANNETTE PACIONI; CHRISTI McDONALD, individually and as Deputy County Counsel; KATY GRANT, as Court Executive Officer; TINA NIETO, as Sheriff-Coroner; RANDY HOPKINS, as Chief of Police, Marina Police Department; NICHOLAS BORGES, as Chief of Police, Seaside Police Department; TARA HIGGINS; SCOTT ERDBACHER; SHANE KELLY; ROLAND SOLTESZ; ERIN BOYLAN; DAVID MIGDAL; EVAN GEORGE; SUSAN BLITCH; ALEX CARDINALE; RAYMOND BUENAVENTURA; OFFICE OF THE PUBLIC DEFENDER; DISTRICT ATTORNEY OF MONTEREY COUNTY; and DOES 1–20,
Defendants.

)

**Case No.: 5:26-cv-12456-PCP**

**PLAINTIFF'S REPLY TO DEFENDANT COUNTY OF MONTEREY'S FURTHER RESPONSE TO ORDER REGARDING RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER (FILED NOVEMBER 13, 2026)**

Assigned to: Hon. P. Casey Pitts | Complaint filed: October 23, 2026 | PI Hearing: December 10, 2026, 3:00 p.m.

## I. INTRODUCTION

On November 5, 2026, this Court ordered the County to answer three concrete questions: A.B.'s custodial status, A.B.'s medical treatment, and any withholding of medication. (Dkt. 24.) The County took eleven days and delivered two sentences of present-tense generality from a registered-nurse administrator — wrapped in three sections of procedural straw men. What the County did not say outweighs what it said: it nowhere denies

that medication was withheld at any time; it nowhere supplies a record, a date, a dosage, or a treating clinician; and its only affirmative statements — that A.B. "is offered medication as prescribed" and that "[i]t is within his right to refuse medication" (Rangel Decl. ¶ 4) — concede by necessary implication that medication was not being administered at some point. The Court asked about withholding. The County answered about offering.

The custodial-status answer is likewise incomplete. The County confirms only that A.B. is "housed at the Monterey County Jail." It does not state the charge or charges on which he is held, the bail, or any hold — conspicuously, since the County's own In Custody Log for Booking No. FN2607370 (Exh. 20, filed with Plaintiff's Fifth Supplement) reflects a single Penal Code § 273.5(a) count, $20,000 bail, and no other charge, while defense counsel has asserted a dissuading-a-witness charge that the log does not reflect. A response that confirms the location of custody but not its legal basis is not a response to the question the Court asked.

## II. THE COUNTY TACITLY ADMITS THE WITHHOLDING — AND ITS PRIVACY SHIELD SELF-REFUTES

The Order required the County to address "any withholding of medication." The County responded entirely in the present tense: needs "are being appropriately addressed"; A.B. "is offered medication." (Rangel Decl. ¶¶ 3–4.) Eleven days of investigation produced no denial that medication was withheld on any prior day of this confinement. The non-denial is the answer: at some point, A.B. was not receiving his prescribed medication. Counsel's phrasing — the County "believes" A.B. is receiving appropriate treatment "subject to his rights to refuse care" — is not evidence, and the hedge is a tell.

The "right to refuse" is no safe harbor here; it is the indictment. A.B. stands adjudicated mentally incompetent (No. 26CR000939, Feb. 5, 2026), with no restoration under Penal Code § 1372 — a judicially noticeable fact. For an adjudicated incompetent, refusal of prescribed psychotropic medication is a symptom of the adjudicated condition, not an informed medical choice. A custodian that accepts "refusal" from such a detainee and lets the medication lapse, without physician escalation, documents the very deliberate indifference Plaintiff alleges. And

the declaration itself is incompetent to the task: Mr. Rangel is a Registered Nurse administrator employed by CHPMonterey, Inc. — the successor jail-health contractor — not the treating psychiatrist. He attaches no medication administration record, no dates, no dosages, no physician note; his “consistent with the applicable standard of care” is a bare conclusion from a lay declarant on psychiatric medication management.

The County’s cited privacy authority refutes the County. It invokes 45 C.F.R. § 164.512(e)(1)(i) as the reason it “limits its response” — but that provision is the judicial-proceedings authorization: it permits a covered entity to disclose protected health information “in response to an order of a court.” This Court’s Order (Dkt. 24) is that order. The County cited the key while claiming the door is locked. If any comfort order is required, Plaintiff requests it; the regulation the County itself cites supplies the mechanism.

## III. THE SERVICE ARGUMENT IS A STRAW MAN — SCREENING IS PENDING, A TRO DOES NOT REQUIRE SERVICE, AND THE OTHER DEFENDANTS CAN SPEAK FOR THEMSELVES

The County styles itself “Unserved Defendant” and devotes a section to service of the summons and complaint. That argument attacks an obligation that has not matured. Plaintiff proceeds in forma pauperis; the complaint is undergoing screening under 28 U.S.C. § 1915(e)(2), and no summonses have issued for anyone. Rule 4(m) allows ninety days from filing — until about January 21, 2027. The County demands completed service of process sixty-nine days before it is due. Pending screening does not detract from the TRO; it explains why Rule 4 service has not yet occurred.

More fundamentally, emergency relief does not wait on service of the complaint. Rule 65(b) authorizes a TRO without notice at all, and Rule 65(d)(2) binds the parties and their officers, agents, and employees who receive actual notice. The County admits actual notice: it monitored the docket, responded on November 2 (Dkt. 18), and has now responded again. The Court directed service of its October 30 Order by email, and that service was effected — the County’s own November 2 filing acknowledges receipt. The County has therefore abandoned

its initial stance (that it lacked opportunity to respond) while trying to preserve the label that stance depended on. It cannot occupy both positions.

As to the other defendants: they are competent adults and entities able to speak for themselves — or not — at their own election. The County expressly disclaims authority to appear for them, then dedicates briefing to their service interests. Advocacy for non-clients the County disclaims representing is unauthorized in the truest sense, and it is an odd posture from the movant challenging Plaintiff's authority to speak for his own son. If the County possesses proof that any defendant has not been served with any document, its obligation was to submit it. It submitted none. There is nothing to rebut.

**IV. NEXT-FRIEND STANDING IS SOLID UNDER RULE 17(c)(2) — AND THE COUNTY'S ALTERNATIVE IS A GUARDIAN AD LITEM, NOT DENIAL**

The County argues that a non-attorney may not litigate another's claims, citing 28 U.S.C. § 1654, Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008), and Johns v. County of San Diego, 114 F.3d 874, 876–77 (9th Cir. 1997). Those authorities address non-attorneys asserting the claims of competent adults and entities. They do not touch Federal Rule of Civil Procedure 17(c)(2), which provides that "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Next-friend status is not the unlicensed practice of law; it is the mechanism the Rule itself creates for persons who cannot sue alone.

The governing standard is Whitmore v. Arkansas, 495 U.S. 149, 163–64 (1990) (a "next friend" may appear where the real party in interest is unable to litigate his own cause due to mental incapacity and the next friend is truly dedicated to the best interests of the person on whose behalf he seeks to litigate). Both elements are established — by the County's own record. A.B. was adjudicated incompetent on February 5, 2026 (No. 26CR000939) and has never been restored; he is confined and subject to psychiatric medication. And in the County's own verified filing — already of record in this action — County Counsel Christi McDonald confirmed: "there is a conflict of interest for the Public Defender representing Mr. Bluehorse

in any criminal proceedings.” (Dkt. 28, Ex. G, at p. 10.) Yet the County has continued to seat that conflicted office in A.B.’s county proceedings to sit in and waive his rights — even last month, on October 19, 2026, when Deputy Public Defender Boylan accepted appointment at the very arraignment where the plea and criminal protective order were taken. Plaintiff asserts no standing under the CARE Act in this action; next-friend status rests on Rule 17(c)(2), the adjudicated incompetency, and that conceded and continuing conflict.

The County’s framing — that an “alleged finding of incompetency” does not “necessarily resolve” Plaintiff’s authority — mischaracterizes an adjudicated, unrestored judicial determination as an allegation. The finding is not “alleged”: it is spread upon the County’s own Superior Court register of actions, filed with this Court as Dkt. 7, Exhibit 1 — a public record the County attempted to disappear from public view rather than confront. But even if the Court harbored any doubt, the Rule forecloses the County’s remedy. Rule 17(c)(2) commands that the Court “must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action.” If A.B. may not proceed by his father as next friend, the lawful consequence is appointment of a guardian ad litem — not the denial of emergency medication relief to an incompetent detainee. The County’s threshold argument, taken seriously, protects A.B.; it does not unprotect him.

## V. THE COUNTY’S CONFLICTED REPRESENTATIONS: A.B. MAY NOT HAVE UNCONFLICTED COUNSEL, AND MAY NOT HAVE HIS FATHER — SO HE MUST STAND ALONE

The County’s positions cannot be reconciled. In state court, the machinery that confined A.B. ran through a Public Defender’s office whose conflict the County itself verified on April 27, 2026 (Dkt. 28, Ex. G, at p. 10), while he stood adjudicated incompetent. Pleas, waivers, and detention orders extracted in that posture are void as structural error. Pate v. Robinson, 383 U.S. 375, 385 (1966) (conviction of an accused while legally incompetent violates due process); Godinez v. Moran, 509 U.S. 389, 400–02 (1993) (the competence required to plead

guilty or waive constitutional rights is the same competence required to stand trial; there is no lesser standard); Drope v. Missouri, 420 U.S. 162, 171–72 (1975) (fundamental rights cannot be waived by an accused whose mental condition impairs his capacity to understand the nature and object of the proceedings); Holloway v. Arkansas, 435 U.S. 475, 488–89 (1978) (conflicted representation is structural error requiring automatic reversal, for the evil "is in what the advocate finds himself compelled to refrain from doing"); Cuyler v. Sullivan, 446 U.S. 335, 349–50 (1980) (an actual conflict adversely affecting performance requires no showing of prejudice); Glasser v. United States, 315 U.S. 60, 70, 76 (1942) (the right to counsel's undivided loyalty is fundamental, and its denial is never harmless error).

In this Court, the County now insists A.B. is fit to litigate his own federal constitutional claims — pro se, from a jail cell, medicated, unrepresented. The Supreme Court's teaching runs squarely the other way: "an individual may well be able to satisfy Dusky's mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." Indiana v. Edwards, 554 U.S. 164, 175–76 (2008). If even a defendant who satisfies Dusky may be unable to conduct his own defense, an adjudicated incompetent cannot be expected to litigate a federal action alone, a fortiori. Defendants are not incompetents; they can speak for themselves or not, and they have counsel on demand. The County would deny A.B. both. Indeed, the County would be content with the posture its own conflict record contemplates — in the words of Deputy Public Defender Alex Cardinale, that the conflicted office would "stand back": occupying the chair, entering pleas, waiving rights, and refraining from advocacy. For an adjudicated incompetent, counsel standing back is no counsel at all; it is the precise evil Holloway condemns — an advocate "compelled to refrain from doing." 435 U.S. at 488–89. The posture is untenable. A rule that an adjudicated incompetent must stand alone in federal court because the County has kept the concededly conflicted Public Defender seated on his county proceedings — waiving his rights as recently as last month — is not a standing doctrine; it is an ouster. Due process does not permit the County to benefit from the very conflict its own verified filing documents.

## VI. THE RANGEL DECLARATION CANNOT BE WEIGHED APART FROM THE COUNTY'S DOCUMENTED HISTORY OF FAILING THE INCOMPETENT

The Court should weigh the County's two conclusory paragraphs against the documented history of the jail's medical system. In Hernandez v. County of Monterey, No. 5:13-cv-02354 (N.D. Cal.), the jail's conditions of medical and mental-health care were the subject of a 2015 class settlement, court-appointed monitors, and years of enforcement proceedings. On September 26, 2023, the Honorable Beth Labson Freeman found the jail's health-care contractor out of compliance with 43 remedial requirements concerning medical, mental-health, and dental care, characterizing the contractor's position as "not only frivolous, but also offensive," and citing a death rate at the jail more than twice the national average and a suicide rate more than three times the California jail average; on July 14, 2026, the Court granted final approval of a $2,470,000 settlement of contempt fines against that contractor, whose contract was terminated in December 2025. The Hernandez action is still pending and under active judicial supervision — a further settlement conference is calendared before Judge Freeman on November 19, 2026, thirteen years after the action was filed. Plaintiff requests judicial notice of the still-pending Hernandez docket. Mr. Rangel declares for CHPMonterey, Inc. — the successor contractor installed this year into that same system. An administrator's present-tense assurance, from the successor to a contractor held in contempt, without a single record attached, cannot carry the County's showing on a TRO seeking continuity of psychotropic medication for an adjudicated-incompetent detainee.

The pattern bears the Court's attention. Throughout its filing, the County and its officers reduce this adjudicated incompetent to "an adult" — "an adult whom Plaintiff represents is in County custody"; "his adult son"; the heading "Plaintiff's Attempt to Represent Another Adult Pro Se" — while the incompetency adjudication appears nowhere in the County's filing except as an "alleged finding" — one memorialized on the County's own register of actions (Dkt. 7, Ex. 1). A county that writes the incompetency out of its description of the detainee, and follows that erasure with a tacitly admitted denial of medical care, is displaying the same institutional posture this District sanctioned in Hernandez: minimize, generalize, and

continue. The nomenclature hints at the continuation of the very practices that produced the monitors, the 43 out-of-compliance findings, and the $2,470,000 contempt settlement.

The triad is complete, and it is documented at the highest level of the State. In the civil setting, the County's CARE Act performance is a matter of official record: on March 2, 2026, the Governor publicly named Monterey County one of ten counties "underperforming" in CARE Act implementation — "the CARE Court ICU. The bottom 10" — and reminded local leaders of their "moral and legal obligation to deliver this transformational tool for those who need it most." In the criminal setting, the County has kept the concededly conflicted Public Defender seated through every county proceeding, waivers extracted while the adjudication of incompetency stood. In the jail, the present-tense-only response tacitly admits medication was not administered at some point, within a jail medical system held in contempt for 43 out-of-compliance requirements — an action still pending today. In each setting, the incompetent is offered no protection; and in this Court the County completes the pattern by expecting of him what is not factually or legally possible — that an adjudicated incompetent, purportedly medicated and confined, litigate his own federal case without the help of counsel or his next friend. Edwards, 554 U.S. at 175–76.

## VII. REQUESTED RELIEF

Plaintiff respectfully requests that the Court: (1) grant the renewed application and order the County to ensure administration of A.B.'s prescribed psychotropic and other medications, with any refusal by this adjudicated-incompetent detainee escalated to a physician within 24 hours and documented; (2) order the County to comply fully with the Court's Order (Dkt. 24) by stating with specificity A.B.'s custodial status — the charge or charges on which he is held, the bail, and any holds — and his medication situation, including each prescribed medication, the dates of administration or non-administration during this confinement, and the responsible clinician; (3) treat the County's present-tense-only response as a tacit admission that medication was not administered at some point during this confinement; (4) take judicial notice of No. 26CR000939, the still-pending Hernandez docket (No. 5:13-cv-02354), and the

State's March 2, 2026 CARE Act accountability announcement naming Monterey County among the ten "underperforming" counties — the verified April 27, 2026 opposition (No. 26CA000005) being already of record as Dkt. 28, Exhibit G; (5) in the alternative, order the County to produce A.B.'s medication administration records forthwith, the disclosure being authorized by the very regulation the County cites, 45 C.F.R. § 164.512(e)(1)(i); and (6) if the Court questions next-friend status, appoint a guardian ad litem under Rule 17(c)(2) rather than deny emergency relief.

Respectfully submitted,

Dated: November 14, 2026

/s/ Terrance Walker

______________________________

Terrance Walker, Plaintiff in pro per,
individually and as Next Friend for A.B.