TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20,
Hiep Binh Chanh Ward, Thu Duc City,
Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | | |
|---|---|---|
| TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B., a qualified individual with a disability,<br>Plaintiffs,<br>v.<br>COUNTY OF MONTEREY; CITY OF MARINA; CITY OF SEASIDE; JEANNETTE PACIONI, individually and as District Attorney; CHRISTI McDONALD, individually and as Deputy County Counsel; KATY GRANT, as Court Executive Officer; TINA NIETO, as Sheriff-Coroner; RANDY HOPKINS, as Chief of Police, Marina Police Department; NICHOLAS BORGES, as Chief of Police, Seaside Police Department; ALEX CARDINALE; RAYMOND BUENAVENTURA; EVAN GEORGE; DEBRA KANEVSKY MIGDAL; TARA A. HIGGINS; STEPHANIE ZAMORA, individually and as Deputy District Attorney; JOSE-LUIS ZAMUDIO, individually and as Police Officer, Seaside Police Department; and DOES 1–20,<br>Defendants. | ) | **Case No.: 5:26-cv-12456-PCP**<br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND STATUTORY RELIEF**<br>**42 U.S.C. §§ 1983, 12132, 12203;**<br>**FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS;**<br>**DECLARATORY AND INJUNCTIVE RELIEF**<br>**DEMAND FOR JURY TRIAL**<br>**Assigned to: Hon. P. Casey Pitts** |

Plaintiffs Terrance Walker, proceeding individually, and A.B., by his Next Friend Terrance Walker, allege as follows:

## NOTE OF SECOND AMENDMENT

Plaintiff Terrance Walker, individually and as Next Friend of A.B., files this Second Amended Complaint to: (1) correct the caption names of two defendants — Defendant Jeannette Pacioni (previously misspelled "Jeanine") and Defendant Debra Kanevsky Migdal (whose full name is now stated); (2) add three defendants whose roles are documented in the record: Deputy District Attorney Stephanie Zamora, who appeared for the prosecution at the October 19, 2026 arraignment described herein; Seaside Police Officer Jose-Luis Zamudio, who effected the October 15, 2026 arrest described herein; and Tara A. Higgins, the ward's appointed criminal-defense counsel, whose documented conduct — including her November 4, 2026 email (Exhibit U) — is pleaded below; (3) add the March 2026 written coordination among the ward's appointed counsel and County Counsel (Exhibit S) and the resulting civil-conspiracy count (Count VII); (4) plead the disappearance and manipulation of the ward's court records and the siloing of his cases, and the institutional motive for both; (5) document the threatened and actual escalation of stale and invented charges against the ward from August through November 2026; (6) plead with particularity the March 20–23, 2026 sequence — the ward's voluntary Friday appearance and re-calendaring, counsel's written assurances that the warrants would be recalled, the weekend disappearance of the appearance record, the Sunday arrest on the stale warrant at his recovery facility, and the abandonment of the ward at the March 23 hearing (Exhibit T); and (7) incorporate the allegations of Plaintiffs' October 28, 2026 emergency application for a temporary restraining order (Dkt. 5). All allegations of the prior complaints are re-alleged and incorporated herein; paragraphs are renumbered in a single sequence, this Second Amended Complaint being a complete restatement that supersedes the prior complaints. Consistent with the Court's docket, the exhibits identified in the First Amended Complaint (Exhibits A through R) are filed separately (Dkt. 28) and are incorporated by reference, not re-attached; only new Exhibits S, T, and U accompany this pleading. The ward is identified throughout by the initials "A.B." to protect a disabled individual's privacy in public court records, and his name is redacted from Exhibits S, T, and U.

This Second Amended Complaint preserves and incorporates all claims and factual predicates supporting Plaintiffs' pending Renewed Application for Temporary Restraining Order (Dkt. No. 13) and Motion for Preliminary Injunction (Dkt. No. 17), and does not alter or moot the relief requested therein.

## I. PRELIMINARY STATEMENT

1. This is an action about what happens to a disabled man when the institutions charged with protecting him coordinate, instead, to process him. Between January 28, 2026 and the present: the Monterey County Superior Court rejected the petition that opened his CARE Act case twice in one day; it adjudicated him incompetent to stand trial on February 5, 2026; the District Attorney prosecuted him across nine criminal dockets anyway, taking pleas in them — the latest on October 19, 2026, from a man that court had adjudicated incompetent more than eight months earlier; the County's own verified filings concede IST findings and Mental Health Diversion in six of his dockets while his lawyers prosecuted others on a theory of day-to-day competency "fluidity" that the United States Supreme Court has foreclosed; the jail held him without charges three times — March 22–26, 2026, September 11–15, 2026, and, two days after this action was commenced, October 15, 2026, when a Seaside police officer arrested the 911 caller himself: the ward had telephoned the police to report that he had been struck, no active no-contact order existed against him, and, on information and belief, no witness other than the accusing witness reported any assault; the court's case-management system marked his live civil CARE Act case "Closed" while hearings sat calendared into 2027, and the "Found Incompetent" adjudication disappeared from the public portal; his public defender — whose office simultaneously represents the complaining witness against him — wrote that he would be "standing back," that the ward's father should be "ignored," and that the ward "has not been found incompetent in these particular cases"; and every state corrective channel that exists — the State Bar, the jail's ADA grievance process, the Court of Appeal, and the California Supreme Court — was invoked and declined to act. Running beneath all of it, the County has for thirteen years litigated Hernandez v. County of Monterey,

No. 5:13-cv-02354 (N.D. Cal.) — a jail-conditions class action, still pending today, in which the County's jail healthcare contractor stands adjudicated in civil contempt of forty-three requirements concerning medical, mental-health, and dental care — and, on information and belief, the County's siloing of this ward's cases and the disappearance of his records serve to keep the serial prosecution and custodial treatment of an adjudicated incompetent outside the monitoring and scrutiny that case has brought. This Court is the last forum that has not been asked.

## II. PARTIES AND STANDING

2. Plaintiff Terrance Walker is A.B.'s father, his designated CARE Act statutory supporter under Welf. & Inst. Code § 5981, and brings individual claims for retaliation against his own advocacy. He sues as next friend for A.B., who was adjudicated incompetent to stand trial on February 5, 2026 — a judicial finding that is simultaneously the reason he needs a next friend and the reason this case exists. Whitmore v. Arkansas, 495 U.S. 149, 163–66 (1990).

3. Defendant County of Monterey is a municipal corporation responsible for the District Attorney, Public Defender, County Counsel, Sheriff, and the court administration functions performed through its officers.

4. Defendant City of Marina is a municipal corporation whose police department arrested A.B. on September 11, 2026.

5. Defendant City of Seaside is a municipal corporation whose police department arrested A.B. on October 15, 2026 (booking no. FN2607370). A.B. has remained in custody continuously since.

6. Defendant Pacioni is the Monterey County District Attorney, sued in her official and individual capacities.

7. Defendant McDonald is Deputy County Counsel, sued individually and officially.

8. Defendant Grant is Court Executive Officer and Clerk, sued in her official capacity for the customs and practices of the clerk's office and case-management system.

9. Defendant Nieto is Sheriff-Coroner, sued in her official capacity for Monterey County Jail practices.

10. Defendant Hopkins is Chief of the Marina Police Department, sued in his official capacity.

11. Defendant Borges is Chief of the Seaside Police Department, sued in his official capacity for the customs and practices of that department, including its arrest and order-verification practices as applied on October 15, 2026.

12. Defendants Cardinale, Buenaventura, George, and Migdal are Monterey County Public Defender attorneys, sued in their individual capacities.

13. Defendant Tara A. Higgins is an attorney appointed as criminal-defense counsel for the ward in the Monterey County Superior Court proceedings described herein, sued in her individual capacity. Though a private attorney, she acted under color of state law through her concerted action and conspiracy with the public officials and offices named herein, as pleaded below. Tower v. Glover, 467 U.S. 914 (1984); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539 (9th Cir. 1989).

14. Defendant Stephanie Zamora is a Deputy District Attorney for the County of Monterey, sued in her individual and official capacities for her participation in the October 19, 2026 proceeding described herein — at which a not-guilty plea was taken from, and pretrial-detention conditions and a two-year criminal protective order were imposed on, an adjudicated-incompetent ward — and, on information and belief, for related investigative and administrative acts outside the advocative function.

15. Defendant Jose-Luis Zamudio is the Seaside Police Department officer who arrested A.B. on October 15, 2026 (booking no. FN2607370); he is sued in his individual capacity.

16. Officers of the Marina, Seaside, and Monterey County Sheriff's agencies involved in the arrests and custodies at issue are sued as Does 1–20 pending disclosure of their identities through discovery and the pending public-records requests.

## III. JURISDICTION AND VENUE

17. Federal question jurisdiction exists under 28 U.S.C. §§ 1331 and 1343; jurisdiction over ADA claims under 42 U.S.C. § 12133; supplemental jurisdiction under 28 U.S.C. § 1367. Declaratory relief is available under 28 U.S.C. §§ 2201–02. This Court may enjoin ongoing unconstitutional conduct by state officials under Ex parte Young, 209 U.S. 123 (1908), notwithstanding Younger v. Harris, 401 U.S. 37 (1971), for the reasons in Part VI.

18. Venue lies in the San Jose Division of the Northern District of California under 28 U.S.C. § 1391(b) and Civil Local Rule 3-2(e): the events occurred in Monterey County, California. This action is assigned to the Honorable P. Casey Pitts in the San Jose Division.

## IV. FACTUAL ALLEGATIONS

### A. The exclusion began at intake

19. On January 28, 2026, Plaintiff submitted the verified CARE-100 petition commencing the CARE Act proceeding, Case No. 26CA000005, together with a fee-waiver request. The clerk's office rejected the filing twice the same day — 12:58 p.m. and 1:20 p.m., transaction numbers 26MY00001985 and 26MY00001999 — while A.B. sat unmedicated in custody. Self-represented litigants are exempt from the electronic-filing parameters the court invoked. Cal. R. Ct. 2.253(b)(2).

### B. The adjudication the system proceeded to ignore — and then disappeared

20. On February 5, 2026, in Monterey County Superior Court Case No. 26CR000939, the court arraigned A.B. and the register of actions records the result: "Found Incompetent" (Department 07).

21. On February 18, 2026, the same docket records a Penal Code § 1370.01 diversion-eligibility hearing: "Diversion Accepted" (Department 10). On March 18, 2026, a "Return on Assessment" was entered. No order of restoration to competency appears on any docket from that date to the present.

22. That adjudication was displayed on the court's own public portal for months. In or about August 2026 — approximately two months before the original complaint in this action was filed — it disappeared from the portal, and it remains absent as of this filing. The register

entry was captured before its disappearance and is of record in this case (Dkt. 7, Ex. 1). Under Pate v. Robinson, 383 U.S. 375 (1966), Drope v. Missouri, 420 U.S. 162 (1975), Godinez v. Moran, 509 U.S. 389 (1993), and Maxwell v. Roe, 606 F.3d 561 (9th Cir. 2010), that adjudication suspended the power of every department of that court to conduct adversarial proceedings against A.B. until lawful restoration. Defendants proceeded anyway.

**C. Nine dockets, one invisible adjudication — the County's own table**

23. The prosecution's own register of actions shows what followed: 26CR001610 (filed 2/26/26; "Not Guilty Plea Entered" 3/23/26, Dept. 01); 26CR001517 (2/24/26); 26CR002692 (3/24/26); 26CR003635; 26CR003695 (4/23/26); 26CR004170 and 26CR004171 (5/4/26); 26CR006600 — filed and arraigned the same day, July 20, 2026, with a not-guilty plea entered (Dept. 11), five months after the incompetency adjudication; and 26CR009822, filed on the October 15, 2026 arrest described below, in which a not-guilty plea was taken October 19, 2026. Every plea and waiver in these dockets postdates February 5, 2026.

24. The County's own verified opposition of April 27, 2026 concedes the architecture: a table of A.B.'s dockets acknowledging IST findings and Mental Health Diversion in six cases while the County prosecuted four others, each recorded as "No IST finding," on the theory that "[c]ompetency is a fluid matter — an individual can be incompetent one day and competent another." Godinez forecloses that theory; its function was to give every department permission to proceed.

25. Between April 24–25, 2026, Plaintiff attempted to file Notices of Related Case (Cal. R. Ct. 3.300); the clerk's office rejected them (Filing IDs 14305533, 14305566, 14305466, 14305594) — "not a party to case." A clerk's duties are ministerial. The court's public case-management interface displayed the live CARE case — No. 26CA000005 — as "Closed," while the court's own electronic filing system shows status reports entered as late as October 6, 2026 and hearings calendared for February 18, 2027 and March 11, 2027 (Dept. 13).

**D. The Hernandez backdrop: the motive to disappear records and silo cases**

26. Since 2013, Defendant County of Monterey has been a defendant in Hernandez v. County of Monterey, No. 5:13-cv-02354-BLF (N.D. Cal.), a class action over medical, mental-health, and dental care in the Monterey County Jail. That action remains pending today. In it, this District adjudicated the County's jail healthcare contractor in civil contempt of forty-three requirements concerning medical, mental-health, and dental care (Hernandez, ECF No. 838), and approved a $2,470,000 contempt settlement covering violations through December 31, 2025 (Hernandez, ECF No. 1288). A settlement conference in Hernandez is calendared before the Honorable Beth Labson Freeman on November 19, 2026.

27. The deputy county counsel who entered an appearance for the County in this action (Dkt. 33) also appears on the Hernandez docket. The County's custodial and medical-treatment practices toward detainees with mental illness are thus the subject of active federal scrutiny and contempt exposure in a case its own counsel is litigating in this District today.

28. On information and belief, the disappearance of the February 5, 2026 adjudication from the public portal, the "Closed" label on the live CARE case, the rejection of the Notices of Related Case, and the siloing of the ward's prosecutions across departments serve a single institutional purpose: to keep the serial prosecution and custodial treatment of an adjudicated-incompetent detainee invisible — to the public, to this Court, and to the monitoring framework of Hernandez — and thereby to avoid the scrutiny, reporting, and contempt exposure that visible records would invite.

**E. Defense counsel with an admitted, provable conflict**

29. The County appointed the Public Defender's office. In the County's own verified words: "While Mrs. Cardinale has reported, correctly, that there is a conflict of interest for the Public Defender representing Mr. [A.B.] in any criminal proceedings based on the Public Defender's conflict of interest policy, there is no conflict related to the CARE proceedings." The conflict is structural and public: April Buckley — the complaining witness in the criminal prosecutions of A.B. — is defended in her own active criminal case, No. 24CR003973, by a deputy of the same office, at the same address and telephone number as Defendant Cardinale.

30. No withdrawal followed. No motion to enforce the IST stay; no objection to the March 23 or July 20 pleas; no appearance of any kind during A.B.'s custodies; and on October 9, 2026 at 9:48 a.m., Defendant Cardinale advised another court-appointed attorney, in writing: "Dad's constant barrage of AI gibberish is pretty assaultive but if you ignore him he moves targets to the next person," adding "Happy to help, she has my info." (Ex. I, Dkt. 28.)

**F. The March 2026 coordination: "stand back," "concerted legal judgement," and the pre-arranged Department 2 rotation**

31. The written record of March 2026 shows that the siloing was not bureaucratic drift but coordination. In email exchanges of March 19–21, 2026 — copied to Defendant McDonald of County Counsel and to the Public Defender's CARE unit — Defendant Cardinale and Plaintiff corresponded about the March 23, 2026 arraignment and the March 18, 2026 Return on Assessment. (Ex. S.)

32. On March 21, 2026, at 2:10 a.m., Cardinale wrote: "He has not been found incompetent in these particular cases." Hours later he wrote that he would "be standing back and letting that process happen," and that "at least three defense attorneys involved here" would act on "our own concerted legal judgement." (Ex. S.) "Concerted" is his word. The County's own counsel was copied on the exchange.

33. On March 20, 2026 — before the March 23 arraignment occurred — Cardinale described its choreography in advance: the presiding judge "is only with us the one hearing. After that, by last name he'll be in D2"; "he'll be in Dept 2 for a hearing or two before likely all the cases will end up back where the team is used to being"; and "there is a lot of ways this case can go away, it won't be my case. Stay tuned." (Ex. S.) The cases were in fact routed to Department 2. — a department in which none of the ward's previous cases had been heard: his prior matters were in Departments 07 and 10, the clinical track, where the February 5, 2026 adjudication and the February 18, 2026 diversion acceptance were entered. The pre-arranged rotation was thus a detour away from the very departments that held his adjudication, into a department with no connection to his clinical history.

34. During the same period, the court's public portal displayed "No Records Found" in the attorney fields of the ward's criminal dockets, including 26CR001517 and 26CR000939 — leaving no counsel visibly responsible for him — while the ward, then in custody, was reported by Plaintiff to Cardinale to be over-medicated ("It seems like they are over medicating him," March 13, 2026).

35. When a warrant issued in mid-March 2026, Plaintiff notified Cardinale in writing on March 11, 2026. Cardinale deflected, referring the matter to another lawyer. On Friday, March 20, 2026, the ward physically appeared in court and successfully re-calendared his new cases for Monday, March 23, 2026. (Ex. T.)

36. Cardinale's assurances were written and specific. On March 20, 2026, at 8:26 a.m., she wrote: "We located a felony and a misdemeanor and they are on Monday for returns on the warrants. We at the PD will not be representing him on these but will be collaborative with the assigned counsel. Kelly Duncan, whom you are familiar with has some of his cases." At 2:21 p.m. the same day she wrote: "He will have counsel. Monday I don't happen to be there myself to get the warrant recalled but my college [sic] will be and possibly the County Counsel. … After Monday the warrants will be recalled, the cases will be assigned to an attorney that will follow them through their journey through the courts." (Ex. T.) The Kelly Duncan named in that email is the same attorney through whom, on information and belief, the August 14, 2026 threats of "stale" charges described in Section N were conveyed.

37. The record of the March 20 voluntary appearance did not survive the weekend. Over March 21–22, 2026, the appearance was purportedly scrubbed or modified in the County's case-management system — the same disappearance-and-modification pattern pleaded in Section Q below. On information and belief, the scrubbed appearance record facilitated the arrest.

38. On Sunday, March 22, 2026 — two days after his voluntary appearance, and one day before the re-calendared hearing at which the warrants had been promised recalled — the ward was arrested on the stale warrant at his residential recovery facility. He was held four days.

39. At the 1:30 p.m. hearing on Monday, March 23, 2026, the Public Defender stood back, citing a conflict, leaving the ward — adjudicated incompetent six weeks earlier — in a legal vacuum without counsel. No counsel moved to recall the warrant, and no counsel appeared to assure that the ward, having checked in voluntarily, would not be arrested on it. The March 20 assurances were abandoned with him.

40. The "stand back" posture persisted. Nine attorneys were placed on the ward's matters through mid-2026; every rotation was unexplained, and the only reason ever communicated to Plaintiff for any rotation was Plaintiff's own request that counsel assert the IST stay. None of the at least eleven attorneys placed on the ward's matters since February 2026 has filed any motion under Penal Code § 1370.01. On information and belief, the rotation operates as a plausible-deniability ploy, spreading the missing stay motion across so many successive counsel that no single attorney need answer for it. This sequence — a conceded-conflict office, then successive private attorneys whose appointments distribute the inaction, with the IST adjudication itself later disappearing from the public portal — is an attempt to sanitize the record of the conflict, not to cure it.

41. Cardinale's "stand back" was expressly premised on the promised arrival of conflict-free counsel. In the same March 2026 exchanges she forecast that "[c]onflict counsel will likely be in touch on these criminal matters," and that "the new and different conflict counsel that will be assigned Monday" would determine how to proceed. (Ex. S.) No conflict-free counsel ever materialized. On October 19, 2026 — seven months after the office's conflict was conceded in the County's verified filing — Erin Boylan, a deputy of that same conflicted office, accepted appointment in 26CR009822 and, on information and belief based on the ward's contemporaneous account, stated the conflict herself and represented the ward anyway for the protective-order hearing. No one in that office — not its leadership, and not Defendants Buenaventura, George, Migdal, or Cardinale — prevented the further conflict. The office that declared itself too conflicted to represent the ward in any criminal proceeding continued to supply the deputies who appeared in them.

**G. The suppression of the supporter and the pathologizing of the advocate**

42. On April 27, 2026, Defendant McDonald filed a verified opposition quoting the National Library of Medicine's definitions of "delusion" and "persecutory delusions" and applying them to Plaintiff, accompanying a declaration attaching 411 pages of Plaintiff's correspondence. Plaintiff has never been her patient; she holds no medical license. Cal. Bus. & Prof. Code § 2052.

43. On May 1, 2026, the CARE court filed its Order Denying Walker Motions and Requests: no standing as supporter, an order to "immediately cease disclosing confidential information," and a warning of dissolution under Welf. & Inst. Code § 5981(b)(4). The order did not dissolve Walker's supporter status. Nevertheless, county officials thereafter excluded him from all communications and proceedings concerning the matter — including the multi-disciplinary reports and status communications generated after May 1, 2026 (Ex. K) — treating him as dissolved without any dissolution order, any notice, any hearing, or any opportunity to respond.

**H. The corrective channels, invoked and exhausted, in documents**

44. The State Bar closed complaints 26-O-15691/-15692 (May 24, 2026) and 26-O-17639 (September 23, 2026), the latter declining to treat the court's own "Found Incompetent" register entry as evidence of incompetency, and demanding that A.B. himself — an adjudicated-incompetent ward who cannot give legal consent — execute consents and waivers as a precondition to any action.

45. The jail's ADA Coordinator confirmed the September detention's operative facts on county letterhead (September 28–30, 2026), declined to evaluate lawfulness, and forwarded the matter to County Counsel, confirming in writing that "County personnel or legal counsel" shape the County's position. His office's ten-business-day consolidated-response deadline of September 30, 2026 lapsed unmet, and its responses to the October 2026 demands remain outstanding.

46. The Sixth District denied review and stay May 12, 2026 (H054357); the California Supreme Court denied the emergency petition July 8, 2026 (S296638).

47. The exhaustion continued after the First Amended Complaint. An emergency habeas petition on medication continuity, e-filed October 21, 2026 (GreenFiling ID 15507895), was held in abeyance. On October 21, 2026, Plaintiff filed a timely media-coverage request (Judicial Council Form MC-500) under Cal. Rules of Court, rule 1.150; on October 27, 2026, the state court signed Form MC-510 acknowledging review of all nineteen rule 1.150(e)(3) factors but left the grant/deny determination blank, scheduling an open-court hearing while ignoring requests for remote access. The state remedial loop is closed.

**I. Three custodies without legal process**

48. During the pendency of the IST adjudication, A.B. has been subjected to three documented custodial detentions: March 22–26, 2026; September 11–15, 2026; and October 15, 2026 to the present (booking FN2607370).

49. The September detention is documented by the County's own ADA Coordinator (booking 2606535; Penal Code §§ 166(c)(1) and 166(a)(4) charges premised on orders void since the August 12, 2026 dismissal of 25CR008355; release on a "No File" after four days without any judicial determination). The March incarceration of the catatonic ward — following the scrubbed voluntary appearance described above — and the jail's total non-production of medical records in response to the March 24, 2026 written demand, state a deliberate-indifference claim under the Fourteenth Amendment. Duvall v. County of Kitsap, 260 F.3d 1164 (9th Cir. 2001).

**J. The September detention: arrest on orders that no longer existed**

50. On August 12, 2026, Department 10 dismissed the sole underlying criminal matter, Case No. 25CR008355 — register entry: "Heard – Dismissed." Every order, term, and condition of supervision touching A.B. terminated with it.

51. On September 11, 2026, Marina Police Department officers arrested A.B. (booking no. 2606535) on charges requiring a valid, existing order as an element. None existed. He was held four days; no complaint was filed; no judicial probable-cause determination was ever made. On September 15, 2026 he was released on a "No File."

52. The jail processed A.B. knowing he was disabled, yet in four days no one assisted him in understanding his custody, accessing counsel, or reaching the judicial process — contrary to the jail's own written policies recited in the Coordinator's letters. 28 C.F.R. §§ 35.130, 35.152.

**K. The County's response to notice: not correction, but coordination**

53. After each notice — July 20, August 13, August 14, September 27, October 1, October 9, October 10, October 18, 2026 — the County's documented responses were: grievance denials, a referral to County Counsel, closed Bar complaints, and, from the ward's own appointed counsel, written coordination to "ignore" the ward's father. The County has never once, in any document, disputed a date, a docket entry, or a legal authority.

**L. The October 15, 2026 arrest: the 911 caller arrested**

54. On October 15, 2026 — two days after the original Complaint in this action was delivered to this Court's San Jose clerk, and five days after Plaintiffs' written Brady/Giglio demand naming the complaining witness was served on the District Attorney — Defendant Officer Jose-Luis Zamudio of the Seaside Police Department arrested A.B. a third time (booking no. FN2607370), again on the accusation of April Buckley.

55. At the time of that arrest: (a) no active criminal protective order or no-contact order was in place against A.B. — the only such orders traceable to the complaining witness had terminated with the August 12, 2026 dismissal; (b) on information and belief, no witness other than the complaining witness reported any assault; and (c) A.B. himself was the 911 caller — he had telephoned the police to report that he had been struck. The arresting agency arrested the complainant on the say-so of the person he accused, without verifying the existence of any order and, on information and belief, without interviewing any independent witness.

56. The timing requires no embellishment: on October 14, 2026, this same complaining witness appeared at her own Penal Code § 1001.36 mental-health diversion review in Department 10 (Case No. 24CR003973); the register records the result "Heard – Continued," with her next review calendared for November 18, 2026. The ward was arrested the next morning, on her accusation, for the third time in eight months — while adjudicated

incompetent, with no restoration on any docket, in the face of this Court's pending jurisdiction.

57. For the first days of this custody, no charge appeared in any public register and no arraignment was posted, exceeding again the presentment requirement of Cal. Penal Code § 825 and Gerstein v. Pugh, 420 U.S. 103 (1975) — the second time in five weeks the County completed that constitutional violation. The felony complaint in 26CR009822 (Pen. Code § 273.5(a)) was filed thereafter. As of this filing, A.B. remains in continuous custody.

58. On information and belief, the Seaside arrest, like the Marina arrest before it, rests on court orders or accusations traceable to the complaining witness — whose documented record (robbery, 2013; false personation to make others liable, 2016; active Seaside PD investigation No. EG2580173; federal IC3 referral; false proof of service in Case No. 26CV001151; and her own diversion in 24CR003973) was in the District Attorney's written possession before this arrest. No verification of her claims, or of the continued validity of any order, preceded the arrest.

**M. The October 19, 2026 arraignment: a void plea taken with a noted conflict**

59. On October 19, 2026, at 1:30 p.m. in Department 1, the state court conducted the arraignment in 26CR009822. The minute order records: "Deputy District Attorney Stephanie Zamora is present. Defendant appears in custody. Defendant appears without counsel. ... Public defender is appointed, deputy public defender Erin Boylan accepts appointment. ... Plea of not guilty is entered as to all counts. ... Criminal protective order is issued and defendant is served with a copy in court. Order expires ... October 19, 2028. ... No action is taken on pretrial service release. Defendant to remain in custody. Bail remains at $20,000."

60. On information and belief — based on the ward's contemporaneous written account — Deputy Public Defender Boylan stated the Public Defender's conflict at the hearing yet proceeded to represent the ward for the protective-order hearing in which the no-contact order issued. The conflict is the same one the County conceded in its verified April 27, 2026 filing.

61. Defendant Zamora participated for the prosecution at that appearance: a not-guilty plea was taken from, pretrial-detention conditions were maintained against, and a two-year

criminal protective order was issued against a man the court's own register had adjudicated incompetent on February 5, 2026 — with no restoration of competency on any docket, before any court, in the intervening eight months. Under Pate and Godinez, that plea and every act taken on it are void. The IST adjudication had been served on the District Attorney's Office in writing repeatedly, including on October 10, 2026; the register was available to the prosecution at all times.

**N. Threatened and actual vindictive escalation: the stale-charges campaign**

62. The prosecution telegraphed the escalation. On August 14, 2026, Plaintiff served a written notice on the District Attorney's Office, assigned prosecutors, defense counsel, County Counsel, Public Defender leadership, and the State Bar, memorializing threats communicated by the prosecution through attorney Kelly Duncan of an intent to file or add "stale" criminal charges against A.B. — threats delivered directly after the formal invocation of the IST stay, the service of Brady disclosures, and the then-pending California Supreme Court petition (S296638). In or about September 2026, Defendant Pacioni told A.B.'s then-counsel, Kelly Duncan, of her plans to bring still more charges against him. Each threat was carried out: stale charges — accusations pre-dating the incompetency adjudication — were threatened and in fact added across the dockets, against a defendant the prosecution knew to be adjudicated incompetent, rendering every such count void. Pate, 383 U.S. at 386; Godinez, 509 U.S. 389.

63. The charge-inflation continued into the present custody. On information and belief — based on the ward's contemporaneous written account — Defendant Higgins, his appointed counsel, asserted to him in November 2026 that a dissuading-a-witness charge was a basis for his custody. The County's In Custody Log for Booking No. FN2607370 reflects no such charge; it reflects a single count (Pen. Code § 273.5(a)) with bail of $20,000. And no protective order existed on October 15, 2026 — the criminal protective order issued October 19, four days after the arrest. The phantom charge inflates the record of custody just as the stale charges inflate the record of prosecution.

64. Counsel's custody advice was no more accurate than her custody accounting. Although Defendant Higgins appeared as the ward's counsel following the October 19, 2026 arraignment, she took no action for nearly three weeks — from October 19 through in or about November 6, 2026 — to challenge the pretrial-detention conditions imposed that day, conditions entered against an adjudicated-incompetent ward whose plea and waivers were void. On information and belief — based on the ward's contemporaneous written account — she also misinformed the ward that his bail was $55,000, nearly three times the $20,000 reflected in the County's custody log for Booking No. FN2607370. (Ex. P.) A defender who leaves void pretrial conditions unchallenged while overstating the price of release by a factor of nearly three is not functioning as counsel within the meaning of the Sixth Amendment; that inaction and that misinformation are further overt acts in furtherance of the concerted conduct pleaded herein.

65. Under Blackledge v. Perry, 417 U.S. 21 (1974), and United States v. Nosal, 828 F.3d 1076 (9th Cir. 2016), threatening or increasing charges to penalize the exercise of constitutional and statutory rights raises a presumption of vindictiveness. Here the presumption rests on documents: the August 14, 2026 written notice, the added dockets, the custody log, and the minute order.

**O. The "adult" retort: the uniform answer to an adjudication of record**

66. Confronted with the February 5, 2026 adjudication, the defendants and their counsel do not dispute the register; they reclassify the man. Defendant Cardinale, March 21, 2026: "He has not been found incompetent in these particular cases." County Counsel's verified filing, April 27, 2026: "Competency is a fluid matter." The County's filing in this Court, November 13, 2026 (Dkt. 32): an "alleged finding of incompetency." And Defendant Higgins, November 4, 2026, in writing: "Your son is not a ward- he's an adult."

67. "Adult" is the answer to "incompetent" — as though majority resolved capacity. The adjudication is not "alleged"; it is recorded on the County's own court register, of record in this case (Dkt. 7, Ex. 1), displayed on the court's public portal for months before it disappeared. Each variant of the retort — case-siloing ("these particular cases"), temporal

("fluid"), evidentiary ("alleged"), and categorical ("adult") — is a different door out of the same room: a register entry every one of them has seen and none of them will address.

68. The same November 4, 2026 email betrays the retort. In a single message, Defendant Higgins (i) denied the adjudication — "Your son is not a ward he's an adult"; (ii) defended the warrantless October 15 arrest — "A warrant is not needed as your son was arrested for allegedly committing a felony domestic violence crime"; (iii) conceded, in the same message, that she had "declared a doubt as to his competency" under Penal Code § 1368 and intended to use the resulting evaluation to seek felony mental-health diversion because, in her words, "there is a nexus between [the ward's] mental health and his alledged [sic] criminal acts" — an admission that his competency was, at minimum, in doubt; (iv) sourced the ward's custodial medication status not from the jail but "per your son"; and (v) refused all further communication with the ward's father and statutory supporter — "Thats [sic] the only info you're getting from me. … Do not email me" — telling Plaintiff he has "no standing to litigate anything on behalf of your son." (Ex. U.) A defense lawyer who declares a doubt as to competency while denying the adjudication of incompetency, who learns her client's medication status from the client rather than the jail, and who cuts off the statutory supporter, is not protecting the ward from the state; she is protecting the state's custody of the ward. Her message is the supporter-suppression pattern of Section G in a single email.

**P. Medication continuity and custodial harm**

69. Custodial officials and appointed CARE counsel repeatedly failed to coordinate prescribed psychotropic medications during the March and September 2026 detentions; the September deprivation caused acute decompensation, and A.B. has stated — publicly, in his own posted account — that after the September 11–15 custody he was sick for approximately one month. On October 18–19, 2026, Plaintiffs demanded in writing that the jail's ADA coordination arrange medication continuity with his residential treatment program (Sun Street / Hope Housing). Those demands remain unanswered.

70. A.B. is purportedly medicated and confined. The County asserts that he is being medicated, but it has never stated with specificity each prescribed medication, the dates of

administration or non-administration during this confinement, or the responsible clinician — the specificity this Court ordered (Dkt. 24). The ward's treating program, his medications, and his clinical history are known to the County; each day of interruption deepens the deliberate-indifference and program-access violations pleaded herein.

71. The harm is emotional and psychological as well as physical. A.B. has been arrested three times in eight months on the accusation of a single witness, twice on orders that did not exist, and held for days without charge or judicial presentation while adjudicated incompetent; he has been separated from his father and statutory supporter, from his treatment program, and from his young daughter; and he has been purportedly medicated and confined while the officials responsible reclassified him as an "adult" and proceeded. Each of these events was documented to the defendants as it occurred. The resulting emotional and psychological trauma — the deterioration of a documented psychiatric condition under confinement, punctuated by repeated seizures and releases without process — is a direct and foreseeable consequence of the conduct pleaded herein, and it compounds with each day the October custody continues.

**Q. Record scrubbing and case-management manipulation**

72. The pattern of record manipulation is specific and repeated: (i) the February 2026 IST adjudication disappeared from the public portal; (ii) the March 18, 2026 Return on Assessment has appeared and disappeared inconsistently; (iii) the record of the ward's voluntary March 2026 appearance to reschedule was scrubbed, facilitating his March 22, 2026 arrest; (iv) the live CARE case displays as "Closed" while hearings stand calendared into 2027; (v) attorney-of-record fields displayed "No Records Found" while the ward faced charges; and (vi) the Notices of Related Case intended to connect the criminal dockets to the CARE case and the IST adjudication were rejected by the clerk's office on April 24–25, 2026.

73. On information and belief, these were manual interventions in the case-management system: the system's design links and flags a defendant's related matters, and the routing of the ward's cases away from the clinical track (Department 10) and into Department 2 was described in advance by defense counsel as the expected path. (Ex. S.) Each intervention had

the same effect: the adjudication stayed invisible, and the prosecutions proceeded.

## V. CAUSES OF ACTION

**COUNT I — Fourth and Fourteenth Amendments (A.B., by next friend): False Arrest, False Imprisonment, Deliberate Indifference — City of Marina, Hopkins, City of Seaside, Borges, Zamudio, Does 1–20, Nieto, County**

74. Paragraphs 1–73 are incorporated as though fully set forth here.

75. The September 11, 2026 arrest by Marina PD and the October 15, 2026 arrest by Seaside PD were each effected without probable cause or any valid legal basis: the September arrest rested on orders void since August 12, 2026; the October arrest — effected by Defendant Zamudio — rested on the accusation of a witness whose record was in the prosecution's possession, made against the very man who had called 911 to report that he had been struck, with no active order and, on information and belief, no independent witness. No reasonable officer could have believed otherwise — the dismissing court's register is public, and the witness record was served in writing on the District Attorney on October 10, 2026.

76. The September four-day detention exceeded Gerstein and County of Riverside v. McLaughlin, 500 U.S. 44 (1991); the October detention repeated and compounded that violation after full notice, and after the commencement of this action.

77. The March 22–26 incarceration of a catatonic ward — arrested on a warrant after his voluntary appearance to reschedule was scrubbed from the case-management system — followed by the jail's total non-production of medical records in response to the March 24, 2026 demand, states deliberate indifference under Duvall. The October custody — with medication continuity demanded in writing and unanswered — states it again, now with a documented month-long illness following the prior custody.

78. The Cities of Marina and Seaside and Chiefs Hopkins and Borges are liable under Monell for their departments' failure-to-verify customs; the County and Sheriff Nieto are liable for the jail's hold, intake, and medical-response practices.

**COUNT II — Due Process (A.B.): Proceeding Against an Adjudicated Incompetent; Void Pleas — Pacioni, Zamora, County, Cardinale, Buenaventura, George, Migdal**

79. Paragraphs 1–73 are incorporated as though fully set forth here.

80. Every post-February 5, 2026 plea, waiver, and proceeding in the nine dockets was conducted in defiance of a standing adjudication of incompetency and is void — most recently the October 19, 2026 plea in 26CR009822, taken in the presence of Defendant Zamora from a defendant who appeared in custody and without counsel until a deputy of the conflicted Public Defender's office accepted appointment in the courtroom. The County's "fluid competency" theory, adopted in its own verified filing, is the rationalization by which each department proceeded.

81. The pattern of arrests and charge escalation after written notice satisfies Blackledge v. Perry, 417 U.S. 21 (1974): the August 14, 2026 documented threat, conveyed through counsel, to refile stale charges following the invocation of the IST stay and Brady disclosures; the September arrest following months of notice; the October arrest following this Court's own filing and the October 10 Brady/Giglio demand by days; and the November 2026 assertion to the ward of a custody basis that the County's own custody log does not contain. The presumption of vindictiveness is now a documented sequence of threats and three custodies.

82. Counsel defendants' failure to assert the mandatory stay — while carrying an admitted, unwaived conflict, and while coordinating, in writing, to "stand back" and let the process "happen" — deprived A.B. of conflict-free counsel and made every subsequent act possible.

**COUNT III — First Amendment (Walker, individually): Retaliation and Prior Restraint — McDonald, Grant (official), County**

83. Paragraphs 1–73 are incorporated as though fully set forth here.

84. Plaintiff Walker's protected activity includes State Bar complaints, petitions to legislators, coordination with counsel, appellate filings, public-records requests, and the October 10 Brady/Giglio demand.

85. Documented adverse actions in response: the Bus. & Prof. Code § 2052 "persecutory delusion" framing; the May 1, 2026 gag order; the clerk rejections; the fraudulent "Closed" docket status; the coordination-to-ignore; and the October 15 arrest of the ward — two days after this action commenced — as retaliation for the litigation itself. The May 1, 2026 gag directive is a prior restraint carrying a heavy presumption of invalidity. Every element of the retaliation sequence is established by documents defendants authored or received.

**COUNT IV — ADA: 42 U.S.C. § 12132 (A.B.) and § 12203(a), (b) (Both Plaintiffs) — County, Nieto, Pacioni, Cardinale, and the City Defendants**

86. Paragraphs 1–73 are incorporated as though fully set forth here.

87. The jail's custody of a ward known to be incompetent — in March, September, and October 2026 — without any step to connect him to the judicial process or counsel, and with unanswered written demands for medication continuity, denied A.B. the benefits of the jail's services by reason of disability, in violation of 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.130, 35.152.

88. The September and October arrests, following months of written notice and the commencement of this action, are retaliation under § 12203(a). Defendant Cardinale's October 9 written instruction to "ignore" the ward's statutory supporter is interference under § 12203(b).

**COUNT V — Access to Courts / Procedural Due Process (Both Plaintiffs) — Grant (official), County**

89. Paragraphs 1–73 are incorporated as though fully set forth here.

90. The January 28, 2026 intake rejections, the April clerk rejections, the "Closed" status on a live case with 2027 hearings, the appearing and disappearing register entries, and the County Counsel discovery blockade deprived both plaintiffs of access to the courts. Lewis v. Casey, 518 U.S. 343 (1995). The CARE Act creates a protected liberty interest in the support framework; its arbitrary destruction — without hearing the respondent, without inquiry into his will and preferences — denied procedural due process.

**COUNT VI — Monell — County of Monterey, City of Marina, and City of Seaside**

91. Paragraphs 1–73 are incorporated as though fully set forth here.

92. Each unconstitutional act implemented a municipal custom or policy: the "fluid competency" doctrine adopted in County Counsel's verified filing; the intake-rejection, clerk-rejection, docket-status, and register-visibility practices under Defendant Grant; the jail hold, intake, and medical-response practices under Defendant Nieto — including the practice of holding detainees for days pending prosecutorial decisions without judicial presentation, twice completed in five weeks; the Public Defender's conflict-tolerance and rotation practices; Marina PD's order-verification failures under Defendant Hopkins; Seaside PD's order-verification and accusation-verification failures under Defendant Borges, completed on October 15, 2026, two days after this action commenced; and the County's practice of siloing an adjudicated-incompetent defendant's cases and rendering his adjudication invisible — a practice whose institutional payoff is concealment of custodial and psychiatric-treatment failures from the monitoring framework of Hernandez v. County of Monterey.

**COUNT VII — Civil Conspiracy to Deprive Constitutional Rights, 42 U.S.C. § 1983 (Both Plaintiffs) — All Defendants**

93. Paragraphs 1–73 are incorporated as though fully set forth here.

94. A § 1983 conspiracy claim lies where two or more persons conspire or act in concert to deprive another of a constitutional right and an overt act in furtherance causes injury. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989). The agreement may be shown by circumstantial evidence of a meeting of the minds; no express agreement need be proved. Public defenders who conspire with state officials act under color of law. Tower v. Glover, 467 U.S. 914, 920 (1984).

95. Here the meeting of the minds is documented, not inferred: (a) the March 19–21, 2026 emails among Defendant Cardinale, Defendant McDonald of County Counsel, and the Public Defender's CARE unit arranging the ward's procedural path — "standing back," "our own concerted legal judgement," "at least three defense attorneys involved," and the Department 2 rotation described in advance, which then occurred (Ex. S); (b) the County's

verified April 27, 2026 filing adopting the "fluid competency" theory that gave each department permission to proceed; (c) the October 9, 2026 written instruction to "ignore" the ward's father and statutory supporter; (d) the disappearance of the adjudication from the public portal, the "Closed" label on the live CARE case, and the clerk rejections — acts within the clerk and court-administration sphere; (e) two arrests of the ward, each within days of his father's protected activity and each resting on the accusation of the Public Defender's own client; and (f) the threatened and actual escalation of charges — stale charges threatened through counsel on and after August 14, 2026 and carried out across the dockets, and a custody basis asserted to the ward in November 2026 that the County's own custody log does not contain.

96. The overt acts are the pleas, the three custodies, the suppressed supporter role, the medication interruptions, and the record manipulations pleaded above. Each defendant knew the February 5, 2026 adjudication existed; each acted consistently with the arrangement; A.B. lost months of liberty, treatment, and lawful process, and Plaintiff Walker lost the statutory supporter role the CARE Act gave him.

97. On information and belief, the conspiracy served, among its purposes, to insulate the County's custodial and mental-health practices from the scrutiny and monitoring exposure of Hernandez v. County of Monterey, then and now pending in this District.

## VI. ABSTENTION — WHY THIS COURT MAY ACT

98. Younger's bad-faith and harassment exceptions are met by the County's own documents: prosecutions refiled after written notice; pleas taken after adjudication; arrests for violating orders that had ceased to exist; a third custodial seizure of the ward commencing two days after this action was filed; a "Closed" label on a live case; and a disappearing adjudication. Futility is established by the record of the channels themselves — and it has grown since the First Amended Complaint: the emergency habeas petition sat in abeyance; the media request was acknowledged and left undecided; the State Bar demanded that an adjudicated-incompetent ward himself consent before it would act; and on October 19, 2026

the state court took another void plea. Moreover, the state statutory mechanism designed to prevent wrongful proceedings — the CARE Act's communication duty, Welf. & Inst. Code § 5978.2(a)(1) — was disabled by these defendants; deference cannot run to a forum whose own corrective circuit-breaker the party seeking deference switched off. The Anti-Injunction Act, 28 U.S.C. § 2283, poses no obstacle: § 1983 is "expressly authorized" within its meaning. Mitchum v. Foster, 407 U.S. 225 (1972). Because no state judgment exists, Rooker-Feldman is inapplicable.

## VII. PRAYER FOR RELIEF

99. Plaintiffs respectfully request that this Court: (a) declare that the acts described violate the Fourth, Fifth, Sixth, and Fourteenth Amendments and the Americans with Disabilities Act; (b) issue a preliminary and permanent injunction staying all state criminal proceedings against A.B. pending lawful competency restoration, and vacating the void pleas and waivers entered on and after February 5, 2026, including the October 19, 2026 plea in Case No. 26CR009822; (c) enjoin the Cities of Marina and Seaside, their police departments, and the County from arresting A.B. except upon facially valid process verified as active through CLETS/NCIC, and from booking A.B. without a judicial probable-cause determination within 48 hours of arrest; (d) enjoin the County from interfering with Plaintiff Walker's statutory supporter role and direct the correction of the docket status in Case No. 26CA000005; (e) order immediate production of the October 15, 2026 booking and intake records for A.B. (FN2607370), including body-worn camera footage and CAD/dispatch logs, and confirmation of his presentment; (f) enjoin the destruction or alteration of, and order the preservation of, the case-management-system audit trails for the dockets identified herein, so that the appearing and disappearing register entries can be examined; (g) award compensatory damages for A.B.'s false imprisonments and for the physical, emotional, and psychological trauma inflicted by the conduct described herein, and for Plaintiff Walker's First Amendment and § 12203 injuries, in amounts to be proven at trial; (h) award punitive damages against the individual-capacity defendants upon proof of evil motive or reckless and callous indifference,

Smith v. Wade, 461 U.S. 30 (1983); (i) award costs and reasonable attorney's fees under 42 U.S.C. § 1988 and § 12205; and (j) grant all further relief to which Plaintiffs may be justly entitled.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable.

**VERIFICATION (28 U.S.C. § 1746)**

I, Terrance Walker, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief; that the docket facts stated herein are drawn from the Monterey County Superior Court's own public register of actions, the County's own verified filings, and the correspondence records preserved in the exhibits; and that I am authorized to bring this action as next friend of A.B. Executed on November 16, 2026, at Ho Chi Minh City, Vietnam.

/s/ Terrance Walker

Terrance Walker, in propria persona,
individually and as Next Friend of A.B.
Unit C-1501, Opal Gardens, Duong 20,
Hiep Binh Chanh Ward, Thu Duc City,
Ho Chi Minh City, Vietnam 70000 | (775) 971-8679 | walkerbillion@gmail.com

## EXHIBIT INDEX

Exhibits A through R were identified in the First Amended Complaint (Dkt. 1) and are filed separately under Dkt. 28; they are incorporated by reference and are not re-attached. Exhibits S, T, and U are new and accompany this Second Amended Complaint; the ward's name and email address are redacted from them (he is identified as "A.B."). Exhibits B and H were lodged under seal with the Sixth District Court of Appeal in Case No. H054357; Plaintiffs will comply with any protective-order regimen this Court directs.

| **Ex.** | **Description** | **Status** |
|---|---|---|
| **A** | Register-of-actions screenshots, all seven criminal dockets, current as of 10/9/2026 | Filed separately (Dkt. 28); incorporated by reference |
| **B** | 26CR000939 register: "Found Incompetent" (2/5/26); "Diversion Accepted" (2/18/26); Return on Assessment (3/18/26); clerk rejection notices, Filing IDs 14305533, 14305566, 14305466, 14305594 (lodged under seal, H054357) | Filed separately (Dkt. 28); incorporated by reference |
| **D** | 25CR008355 register: "Heard – Dismissed" (8/12/26) | Filed separately (Dkt. 28); incorporated by reference |
| **E** | EFM rejection notices (1/28/26, txn. 26MY00001985, 26MY00001999); Self Help Center escalation thread (1/28–29/26) | Filed separately (Dkt. 28); incorporated by reference |
| **F** | Sheriff's ADA Coordinator (L. Pereira) letters of 3/27/26, 9/28, 9/29, 9/30/2026 | Filed separately (Dkt. 28); incorporated by reference |
| **G** | City of Marina PD CPRA response (Cmdr. R. Cox), 10/8/2026 | Filed separately (Dkt. 28); incorporated by reference |
| **H** | Order Denying Walker Motions and Requests, 26CA000005 (executed 4/30/26; filed 5/1/26), Hon. Elisabeth K. Mineta | Filed separately (Dkt. 28); incorporated by reference |
| **I** | A. Cardinale email of 10/9/2026, 9:48 a.m.; Notice of Active Interference filed in 26CA000005 same date with Proof of Service | Filed separately (Dkt. 28); incorporated by reference |
| **J** | State Bar of California closure letters: 5/24/2026 (Cases 26-O-15691, -15692); 9/23/2026 (Case 26-O-17639, Pacioni) | Filed separately (Dkt. 28); incorporated by reference |
| **K** | GreenFiling case summary, 26CA000005: Status "Closed" (updated 10/08/2026); hearings 2/18/2027 & 3/11/2027 (Dept. 13); A. Cardinale listed as counsel | Filed separately (Dkt. 28); incorporated by reference |
| **L** | 24CR003973 (People v. Buckley) parties screenshot — A. Buckley defended by Monterey County Public Defender deputy J. Hernandez; State Bar profile of Jose Hernandez Jr. #348391 | Filed separately (Dkt. 28); incorporated by reference |
| **M** | HIPAA/ADA Medical Records Demand to Monterey County Jail, 3/24/2026, and ADA Coordinator response of 3/27/2026 (no records produced) | Filed separately (Dkt. 28); incorporated by reference |

| Ex. | Description | Status |
|---|---|---|
| **N** | Court of Appeal, Sixth District, Case H054357: petition for writ of mandate and stay denied 5/12/2026; Emergency Petition for Review and Exhibits as transmitted to the California Supreme Court (incl. Ex. H order) | Filed separately (Dkt. 28); incorporated by reference |
| **O** | Written notice letters to Defendants: 7/20, 8/13, 8/14, 9/27, 10/1, 10/9, 10/10, 10/18, 10/19/2026 (representative examples) | Filed separately (Dkt. 28); incorporated by reference |
| **P** | Booking, arrest, and charging-evaluation records for the October 15, 2026 arrest by Seaside PD (booking FN2607370), including body-worn camera footage, CAD/dispatch logs, and any detainer documentation | Filed separately (Dkt. 28); incorporated by reference |
| **Q** | 24CR003973 register, current as of 10/2026: "Motion — Diversion Accepted" (9/18/26); "Diversion – PCI 1001.36 Review — Heard, Continued" (10/14/26); review calendared 11/18/26 (Dept. 10) | Filed separately (Dkt. 28); incorporated by reference |
| **R** | Medication-continuity and intake-screening correspondence of 10/18–10/19/2026 (jail ADA demand; Sun Street/Hope Housing correspondence) | Filed separately (Dkt. 28); incorporated by reference |
| **S** | NEW — Email dialogue of March 19–21, 2026 (Cardinale–Walker; cc: McDonald, MCPD.CARE): "standing back"; "our own concerted legal judgement"; "at least three defense attorneys involved"; "conflict counsel" forecast — ward's name redacted (identified as "A.B.") | Attached |
| **T** | NEW — Email thread of March 19–20, 2026 (Cardinale–Walker; ward's email account redacted): "He will have counsel… After Monday the warrants will be recalled"; "We located a felony and a misdemeanor and they are on Monday for returns on the warrants" — ward's name redacted (identified as "A.B.") | Attached |
| **U** | NEW — Email thread, T. Higgins–Walker, October 28–November 4, 2026: "Your son is not a ward he's an adult"; "I declared a doubt as to his competency"; "Thats [sic] the only info you're getting from me" — ward's name redacted (identified as "A.B.") | Attached |

Dated: November 16, 2026.

/s/ Terrance Walker

Terrance Walker, Plaintiff, in propria persona, individually and as Next Friend of A.B.