TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20,
Hiep Binh Chanh Ward, Thu Duc City,
Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B.,<br><br>*Plaintiffs,*<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>*Defendants.* | ) Case No.: 5:26-cv-12456-PCP<br>**PLAINTIFFS' OMNIBUS REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF (DKT. 17)**<br>Response to the oppositions of the Seaside Defendants (Dkt. 36) and the City of Marina (Dkt. 38, 39)<br>Date: December 10, 2026<br>Time: 3:00 p.m.<br>Courtroom: 8, San Jose<br>Assigned to: Hon. P. Casey Pitts |

## I. INTRODUCTION

Two of the three public-entity defendants have now responded to the motion for preliminary injunction.[1] Neither defends the October 15, 2026 arrest — the arrest the motion addresses — on the merits. Neither identifies the date, the time, or the judicial officer of the probable-cause determination the Fourth Amendment required for it. The City of Seaside and Chief Nicholas Borges ("Seaside") ask the Court to stop at the threshold — process, standing, and representative authority (Dkt. 36) — while the City of Marina, whose own officers made a different, earlier arrest (September 11, 2026), defends that arrest on a case number that the Monterey County Superior Court's own public index does not contain. (Dkt. 38, 39; Pls.' Second Supp. to Dkt. 23, Ex. 23.) Read together, the oppositions are the strongest evidence yet that the requested verification order is necessary: when local leadership cannot or will not document the legal basis for jailing an adjudicated-incompetent man, the rule of law must be supplied from outside.

---

[1] Defendant County of Monterey filed no opposition to Docket No. 17 within the period prescribed by Civil Local Rule 7-3(a) — fourteen days from the motion's November 1, 2026 filing, extended to November 16, 2026 by Federal Rule of Civil Procedure 6(a)(1)(C) — leaving the motion unopposed as to the County.

This reply addresses first the threshold objections common to both oppositions, then each defendant's filing as a whole.

## II. THRESHOLD OBJECTIONS COMMON TO BOTH OPPOSITIONS

### A. The service objections are premature: the complaint awaits § 1915(e) prescreening, and no service obligation has matured.

Seaside devotes a section of its opposition to "insufficient process" and "insufficient service of process" under Rules 12(b)(4) and 12(b)(5), expressly "preserv[ing]" those objections. (Dkt. 36 at 3–4.) The objections are not ripe, and they are irrelevant to the pending motion. The complaint was filed with an application to proceed in forma pauperis. Under 28 U.S.C. § 1915(e)(2), the Court screens the complaint before any summons issues; under Federal Rule of Civil Procedure 4(c)(3), service for a litigant proceeding in forma pauperis is made by the United States Marshal *on order of the court*. No summons has issued to any defendant, no post-screening order directing service has been entered, and Plaintiffs' Rule 4 obligations have therefore not matured. There is no service defect to preserve because there is nothing yet to serve.

What Rule 65 required for this motion was notice. Every appearing defendant has conceded notice by the only act that matters: briefing the merits. The Court should decline to convert an unripe, pre-screening housekeeping point into a ground for denying provisional relief to an incompetent ward.

### B. Next-friend standing is established on this record — and Plaintiffs sought Rule 17(c) protection first.

Seaside recites *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990), and *Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153, 1159–60 (9th Cir. 2002), and proposes a five-part inquiry into representative authority. (Dkt. 36 at 4–6.) Plaintiffs welcome the inquiry; the record already answers it. Walker is A.B.'s father — the significant relationship *Coalition of Clergy* requires. A.B. was adjudicated incompetent on February 5, 2026, and his criminal proceedings stand suspended — the reason the real party in interest cannot appear for himself. (SAC, Dkt. 35, ¶¶ 61, 66–67; Dkt. 7, Ex. 1 [register entry adjudicating A.B. incompetent].)

Walker also serves as A.B.'s statutory supporter under the CARE Act, and Plaintiffs' own filings asked this Court at the outset to resolve Rule 17(c) representation and to appoint a guardian ad litem for A.B. That request remains pending.

Seaside's authorities hold only that a nonlawyer may not *practice law* for another. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008); *Johns v. County of San Diego*, 114 F.3d 874, 876–77 (9th Cir. 1997). Walker does not seek to practice law. Rule 17(c)(2) expressly provides that an incompetent person without an appointed representative "may sue by a next friend" — a mechanism that would be meaningless if the next friend had to be a licensed attorney. And the remedy Seaside itself identifies (Dkt. 36 at 5–6) is the one Plaintiffs already requested: appointment of a guardian ad litem, which may proceed in parallel with — not instead of — provisional relief.

Two of Seaside's factual assertions cannot stand. Seaside states that A.B. "is represented by Counsel, Tara Ann Higgins" and that, "as of this writing, [he] has not been adjudged incompetent". (Dkt. 36 at 2, 5.) Ms. Higgins appears in the suspended state criminal proceeding; no counsel has appeared for A.B. in this action, and a criminal-defense engagement does not displace next-friend status in a separate civil-rights case. The second assertion is contradicted by the County's own register: the February 5, 2026 incompetency adjudication is recorded there and is already of record in this case. (SAC, Dkt. 35, ¶ 67; Dkt. 7, Ex. 1.) Seaside's formulation is only the latest entry in a documented pattern of reclassifying the adjudication rather than disputing it: case-siloing ("these particular cases"), temporality ("[c]ompetency is a fluid matter"), the County's own "alleged finding of incompetency" (Dkt. 32), and now denial outright. (SAC, Dkt. 35, ¶¶ 24, 66–67.) Seaside cannot simultaneously rely on the § 1368 suspension it acknowledges (Dkt. 36 at 5) and deny the adjudication that produced it.

**C. *Lyons* does not defeat standing; the threat of re-arrest on unverified orders is documented and recurring.**

Seaside invokes *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–11 (1983), for the proposition that past violations do not establish standing for prospective relief. (Dkt. 36 at 6.) *Lyons* involved a plaintiff who could show no likelihood of again encountering the challenged

practice. A.B. is in the opposite posture: an adjudicated-incompetent ward, repeatedly arrested — on the stale-warrant sequence of March 20–23, 2026 and again on October 15, 2026 — by agencies that, on their own filings, cannot document the legal basis for the arrests. (SAC, Dkt. 35, ¶¶ 31–38, 54–58.) Where the same agencies retain custody of, and continuing contact with, the same ward, the threat of repetition is neither speculative nor manufactured. Under *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008), and the sliding scale of *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011), the strength of the merits showing and the irreparable-harm record carry the motion.

## III. REPLY TO THE SEASIDE DEFENDANTS (DKT. 36)

### A. Seaside concedes the Gerstein rule — then declines to satisfy it.

Seaside "do[es] not dispute that the Fourth Amendment requires a prompt judicial determination of probable cause following a warrantless arrest", citing *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). (Dkt. 36 at 7.) Seaside then observes that *Gerstein* "permits a non-adversarial determination based on written submissions", so that arraignment dates alone do not fix when a determination occurred. (Id.) Exactly so — which means Seaside can end this dispute in one sentence: identify the date, the time, the judicial officer, and the written submission. Seaside does not. The October 15 arrest was made by Seaside officers (SAC, Dkt. 35, ¶¶ 15, 54); if a written *Gerstein* determination exists, it is in Seaside's or the County's files, not Plaintiffs'. A party that controls the dispositive document, cites the rule requiring it, and then neither produces nor identifies it has not rebutted the motion. It has confirmed it. The record, not merely the pleading, stands unrebutted: four days passed before any judicial officer saw A.B. — the first arraignment posted Monday, October 19, on a complaint filed that same day and amended the next, with no charge appearing in any public register in the interim. (SAC, Dkt. 35, ¶¶ 57, 59; Dkt. 1, ¶ 39; Dkt. 13, Ex. 2; Dkt. 14, Ex. 6; Dkt. 17 at 5.) And the ward's contemporaneous account confirms that the only verification came after the arrest: "The arresting officers didn't realize that the NCO was terminated until after I was booked at the seaside police office". (Dkt. 13 at 6; Dkt. 13-1 ¶ 7; Dkt. 17 at 3.)

**B. "Prematurity" is Younger in a different costume.**

Seaside argues that relief is "premature" because Case No. 26CR009822 remains pending. (Dkt. 36 at 2, 5.) The motion targets executive conduct — verification that a court order or warrant exists and remains valid before an arrest is made — not the merits of any prosecution. *Gerstein* itself carved exactly this category out of abstention. 420 U.S. at 108 n.9; cf. *Younger v. Harris*, 401 U.S. 37 (1971). Seaside elsewhere concedes the point. (Dkt. 36 at 8 [acknowledging *Gerstein*'s footnote 9].) Seaside invokes the competency suspension as a reason to wait. But those proceedings do not govern Defendants' arrest-verification practices, and they do not protect A.B. from warrantless intrusions; they determine only whether the State may prosecute him. The suspension is itself the reason the ward cannot wait: it presupposes that A.B. cannot defend himself in the very proceedings Seaside says make this Court's protection unnecessary.

**C. The requested order preserves the constitutional status quo and satisfies Rule 65(d).**

Seaside characterizes the order as "affirmative rather than merely status-quo preserving" and invokes Rule 65(d)(1) specificity. (Dkt. 36 at 7–8.) The order asks only that officers verify — before arresting an adjudicated-incompetent man — that the order or warrant they rely on exists and remains valid, and that he be released when the asserted basis proves void. That is prohibitory in substance: it restrains arrests made on unverified process, conduct the Fourth Amendment already forbids. The proposed order lodged with the motion states who must act, what they must check, and when release follows — the full measure of Rule 65(d)(1) specificity. An injunction does not become mandatory merely because compliance requires government to do its job.

**D. Plaintiffs do not aggregate agencies; each defendant answers for its own verification duty.**

Seaside complains that the motion combines events involving different agencies. (Dkt. 36 at 6–7.) The operative complaint does no such thing: the October 15 arrest is attributed to Seaside's own officer, Defendant Zamudio; the September 11 arrest to Marina's officers; the March 20–23 events to their own actors; the County answers for jail custody. (SAC, Dkt. 35, ¶¶

11, 15, 31–38, 54–58.) What the defendants share is not conduct but a legal duty — the obligation of every arresting officer to verify the process he executes, pleaded against Seaside and Chief Borges as a failure-to-verify custom under *Monell*. (SAC, Dkt. 35, ¶¶ 78, 92.) The motion's observation that "[a] practice thrice repeated is a policy" (Dkt. 17 at 5) was offered as evidence that no agency treats verification as its responsibility. The opposition record has strengthened the point: Seaside cannot identify its *Gerstein* determination, and Marina cannot produce the case number it jailed A.B. on.

The two city arrests, moreover, draw from the same well. Marina's September 11 arrest rested on a supposed no-contact order in Case No. 25CR007917, "confirmed" only through a Sheriff's-department relay (Dkt. 39-1 at 4); Seaside's October 15 arrest rested on the same order lineage — the officers "didn't realize that the NCO was terminated until after [A.B.] was booked" (Dkt. 13 at 6; Dkt. 13-1 ¶ 7). One of those orders traces to a case number the Superior Court's public index does not contain (Ex. 23); the other had terminated with the August 12, 2026 dismissal (SAC, Dkt. 35, ¶ 55(a)). Neither order has ever been lodged with this Court by any defendant. The Cities point to the County's systems; the County's systems fed both arrests; and the County has never defended the verification practice itself. That is not aggregation. It is a single county-fed failure-to-verify practice executed by two municipal departments — a custom twice applied, not two claims stitched together.

**E. Chief Borges is sued for prospective relief tied to his office.**

Seaside argues that Chief Borges' title alone cannot establish personal participation. (Dkt. 36 at 7.) The motion seeks prospective, office-based relief: an order running to the department whose policy or custom tolerates arrest without verification. (SAC, Dkt. 35, ¶¶ 11, 78); *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Individual-capacity damages are not before the Court on this motion, and the title that cannot establish damages liability is precisely the office through which injunctive relief operates.

## IV. REPLY TO THE CITY OF MARINA (DKT. 38, 39)

**A. Marina does not defend the operative arrest — and "other cases" are not a probable-cause determination.**

The October 15, 2026 arrest — the arrest this motion addresses — was made by Seaside's officer, not Marina's. (SAC, Dkt. 35, ¶¶ 15, 54.) Marina's opposition does not defend it. The Esparza declaration addresses Marina's own, earlier arrest of September 11, 2026 (Dkt. 39-1), and what it offers even as to that arrest is the observation that A.B. had other pending cases. (Dkt. 39.) The existence of other proceedings is legally irrelevant and rhetorically revealing. *Gerstein* requires an individualized judicial determination of probable cause for *each* seizure, as a prerequisite to extended restraint. 420 U.S. at 114, 125. A defendant with ten pending cases is entitled to the same determination for arrest number eleven as for arrest number one. Marina's substitution of "other cases" for that determination is not an argument; it is a concession that no determination was made — and it says nothing at all about October 15.

**B. Stale records and verbal confirmations are not a system check.**

Marina's showing rests on (a) a Justice Partners docket printout whose own face shows it was last updated in July 2026 — about two months before the September 11 arrest, and predating the August 12, 2026 dismissal reflected in this record (SAC, Dkt. 35, ¶ 55(a)) — and (b) a verbal "confirmation", relayed through the Sheriff's office, of a no-contact order in Case No. 25CR007917, a number the Monterey County Superior Court's own public index does not contain as of November 17, 2026. (Pls.' Second Supp. to Dkt. 23, Ex. 23.) Marina's officers had CLETS and statewide database access; a current system query takes minutes, and the declaration does not state that one was run. Reliance on a months-old printout and a hallway relay, in lieu of the authoritative check available at the scene, is not the objectively reasonable reliance that *Michigan v. DeFillippo*, 443 U.S. 31 (1979), protects — *DeFillippo* presupposes an existing, facially valid enactment, not a phantom case number — and systemic record-keeping failure of this kind defeats the good-faith rationale of *Herring v. United States*, 555 U.S. 135, 146–47 (2009), which presupposes isolated negligence, not systemic or reckless error.

The declaration itself compounds the problem. Declarant Esparza attests to the events of September 11, but the report on which Marina relies is a Mark43 RMS "[s]ummarized report" — by its own face, generated September 29, 2026, more than two weeks after the arrest, and "written either fully or in part using artificial intelligence" (Dkt. 39-1 at 2, 5) — and the

declarant's personal knowledge of the arrest is not established. Fed. R. Evid. 602. An after-the-fact, AI-assisted summary assembled weeks after the arrest is not a substitute for percipient testimony about what the arresting officers knew, and checked, at the scene. Courts now routinely refuse to credit unverified AI-generated content offered as fact and sanction its submission. *See, e.g.*, *Whiting v. City of Athens*, --- F.4th ---, 2026 WL 710568, at *1, *8 (6th Cir. Mar. 13, 2026) (fabricated quotations and misrepresentations of the record; $15,000 punitive sanction against each attorney); *Kennon v. Ashley*, No. 2:24-cv-4034 (D. Kan. Feb. 18, 2026) (order on sanctions concerning deposition quotations that do not appear on the cited transcript pages, referring counsel to disciplinary authorities). That discipline applies with at least equal force where the unverified AI output is the only sworn narrative of the arrest itself: the report's own face records the arrest on September 10, 2026 — the day before the incident it narrates — and a disposition exactly forty-eight hours later, to the minute. (Dkt. 39-1 at 9–10; *see* Part IV.E, *infra*.)

**C. The cursory Gerstein treatment answers itself.**

Marina devotes a single conclusory passage to *Gerstein* and never identifies the date, time, or magistrate of a probable-cause determination for the September 11 arrest its own officers made. *McLaughlin*, 500 U.S. at 56 (determination within 48 hours presumptively required). Marina's own report records the disposition as a detention-only release under Penal Code § 849.5 — no accusatory pleading was filed (Dkt. 39-1 at 10) — and the County's own jail records confirm four days of custody ending in a "No File" release on September 15, 2026. (Dkt. 13-3 at 2.) And to the extent Marina means the supposed no-contact order in 25CR007917 to justify any later custody, that fails twice: the case does not appear in the court's public index (Ex. 23), and a protective order issued in some other proceeding is not a probable-cause determination for a new arrest — it presupposes the very finding Marina cannot produce.

The second charged basis fails with the first. The report records two recommended charges: Penal Code § 166(c)(1) (violation of the protective order) and § 166(a)(4) (violation of the bail condition in Case No. 26CR006600, which ordered only that A.B. abide by any in-place restraining orders and obey all laws). (Dkt. 39-1 at 4–5.) The bail-condition charge is wholly

derivative: it presupposes a violation of the underlying order. Because no order violation has been shown to exist — the order itself has never been produced, and its case number appears in no public index (Ex. 23) — there is no bail-condition violation either. Both prongs of the September 11 arrest collapse into the same unproduced piece of paper.

**D. Powell and Oviatt are nowhere confronted.**

Marina's opposition does not cite, distinguish, or acknowledge *Powell v. Nevada*, 511 U.S. 79 (1994), or *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), which hold that the denial of a timely *Gerstein* determination is itself a constitutional violation — of the Fourth Amendment, applied to these municipal defendants through the Fourteenth. Those are the very two Amendments the motion invokes (Dkt. 17 at 2, 7–8), and they protect an adjudicated-incompetent ward no less than any other detainee. Silence in the face of binding Circuit authority is not a litigation strategy available to a municipality.

**E. Binding authority forecloses Marina's probable-cause, standing, and "mandatory injunction" defenses.**

Marina's reliance on *Michigan v. DeFillippo*, 443 U.S. 31 (1979), and *Baker v. McCollan*, 443 U.S. 137 (1979) (Dkt. 38 at 7–8), is misplaced. In *Beier v. City of Lewiston*, 354 F.3d 1058, 1065–69 (9th Cir. 2004), the Ninth Circuit held that officers have an affirmative Fourth Amendment duty to ascertain the actual terms and current validity of a protection order before arresting for its violation, and may not rest on unverified assumptions. Officer Smith's own report records that A.B. told him on scene that the charges had been dismissed weeks earlier and that the victim advocate had confirmed the restraining order was no longer in effect (Dkt. 39-1 at 4); Smith nevertheless relied on a Sheriff's-department relay concerning Case No. 25CR007917 and a Justice Partners docket "last updated in the seventh month of this year" (id.), rather than the current Superior Court register, which reflects the August 12, 2026 dismissal. (SAC, Dkt. 35, ¶ 55(a); Ex. 23.) The report's own timestamps deepen the problem: the NIBRS arrest data lists the arrest date and time as September 10, 2026 at 11:49 — more than twenty-four hours before the September 11 incident and arrest the same report narrates — and records the disposition at September 12, 2026 at 11:49, mechanically, exactly forty-eight hours later. (Dkt. 39-1 at 9–10.)

The County's own records refute even that timeline: the Monterey County Sheriff's Custody Division ADA and Grievance Coordinator confirms that A.B. was arrested by the Marina Police Department on September 11, 2026 and was "released as a No File release on September 15, 2026" — four days of custody on charges never filed, and a recorded Marina "disposition" that predates his actual release by three days. (Dkt. 13-3 at 2.) And the bail condition Smith cited as the second basis for the arrest rests on Case No. 26CR006600, filed and arraigned July 20, 2026 — five months after the February 5, 2026 incompetency adjudication. (Dkt. 39-1 at 4; SAC, Dkt. 35, ¶ 23.) Under *Fairley v. Luman*, 281 F.3d 913, 917–18 (9th Cir. 2002), systemic record-verification failures resulting in detention without probable cause establish *Monell* liability.

Marina's standing authorities fare no better. (Dkt. 38 at 5–6 [citing *Updike v. Multnomah County*, 870 F.3d 939 (9th Cir. 2017); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Murthy v. Missouri*, 603 U.S. 43 (2024)].) Unlike the plaintiffs in those cases, A.B. is an adjudicated-incompetent ward whose court records were obscured from public view while the same complaining witness repeatedly triggered unverified arrests. (SAC, Dkt. 35, ¶¶ 28, 54–58.) Where recurring harm stems from an ongoing failure-to-verify custom, and a plaintiff's disability makes future encounters with law enforcement likely rather than speculative, *Lyons* is satisfied. *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001); *Lynch v. Baxley*, 744 F.2d 1452, 1456–57 (11th Cir. 1984).

The "mandatory injunction" label (Dkt. 38 at 4 [citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)]) fails as well: an order restraining officers from arresting an adjudicated-incompetent ward without verifying the current validity of the asserted order, and restoring the last uncontested status quo preceding the unlawful October 15 seizure, is prohibitory, not mandatory. *Hernandez v. Sessions*, 872 F.3d 976, 997–99 (9th Cir. 2017). Nor does *Rizzo v. Goode*, 423 U.S. 362, 378–80 (1976) (Dkt. 38 at 9), bar relief where a pattern of unlawful arrests is shown. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996). Formal Rule 4 service is no obstacle either: a preliminary injunction may issue on actual notice where the parties have appeared and briefed the merits. *Republic of the*

*Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) (en banc). And Marina's invocation of *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (Dkt. 38 at 9), is answered by the motion itself: Plaintiffs seek provisional injunctive relief under Rule 65 now, and reserve final declaratory judgment under 28 U.S.C. § 2201 for adjudication on the merits.

**F. This is why federal supervision is necessary.**

Plaintiffs do not ask the Court to find bad faith. They ask the Court to weigh what is already undisputed: local officials jailed an adjudicated-incompetent man on a case number their own court's index does not contain; justified it after the fact with a stale printout and a verbal relay; and responded to a federal motion by waving at "other cases" while declining to engage the Supreme Court and Ninth Circuit decisions that govern. When local leadership will not follow the rule of law in the small things — a docket number, a system check, a 48-hour clock — it will not follow it in the large ones, and the rule of law must be supplied from outside. That is the function of federal equitable power, and it is the function this injunction serves.

**V. CONCLUSION**

The irreparable-injury showing is already made, many times over. It is the October 15 arrest made without verification of any valid order; it is the September 11 arrest and the four-day "No File" custody that followed (Dkt. 39-1; Dkt. 13-3 at 2); and it is the documented interruption of the ward's psychiatric medication and the profound sickness that interruption produced — a record the County's responses (Dkt. 18, Dkt. 32) nowhere answer with a date or a dose. Running through all of it is the posture every defendant now shares: each asks this Court to treat an adjudicated-incompetent ward as competent by reading the court's files selectively — files with a documented habit of disappearing from public view. (SAC, Dkt. 35, ¶¶ 28, 34, 37, 66–67.) The deprivation of constitutional rights "unquestionably constitutes irreparable injury". *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

One more feature of the record measures how far the failure reaches: even a voluntary court appearance does not protect the ward. On Friday, March 20, 2026, A.B. physically appeared in superior court and re-calendared his new cases for Monday, March 23. (SAC, Dkt.

35, ¶ 35.) Over that same weekend, the record of the appearance was purportedly scrubbed or modified in the County's case-management system. (*Id.* ¶ 37.) And on Sunday, March 22, 2026 — one day before the very hearing at which counsel had promised in writing that the warrants would be recalled — he was arrested on the stale warrant at his residential recovery facility and held four days. (*Id.* ¶¶ 36, 38.) A ward who can be jailed on his way to answer the State's own process is not safe from arbitrary arrest anywhere in Monterey County. Only the requested verification order draws that line.

The Court should grant the motion for preliminary injunction and declaratory relief (Dkt. 17); enter the proposed order lodged with the motion; resolve Rule 17(c) representation as Plaintiffs have requested, including appointment of a guardian ad litem for A.B.; and treat the service objections as premature pending § 1915(e) prescreening, which will route service through the Marshal under Rule 4(c)(3).

DATED: November 17, 2026

Respectfully submitted,

/s/ Terrance Walker

________________________________

Terrance Walker

Plaintiff, Pro Se; Next Friend & Statutory Supporter for A.B.