TERRANCE WALKER, Pro Se / Next Friend for ward A.B.
Unit C1501, Opal Gardens, Street 20,
Hiep Binh Chanh Ward, Thu Duc City,
Ho Chi Minh City, Vietnam
Telephone: (775) 971-8679 | Email: walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | | |
|---|---|---|
| TERRANCE WALKER, individually, and as Next Friend & Statutory Supporter on behalf of A.B.,<br><br>*Plaintiffs,*<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>*Defendants.* | ) | Case No.: 5:26-cv-12456-PCP<br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT EXPEDITED, LIMITED DISCOVERY (DKT. 23)**<br>Response to the opposition of Defendants City of Seaside and Chief Nicholas Borges (Dkt. 44)<br>Assigned to: Hon. P. Casey Pitts<br>Discovery Magistrate: Hon. Virginia K. DeMarchi |

## I. INTRODUCTION

Defendants City of Seaside and Chief Nicholas Borges ("Seaside") oppose Plaintiffs' Motion for Leave to Conduct Expedited, Limited Discovery (Dkt. 23) while simultaneously conceding nearly every legal principle that entitles Plaintiffs to immediate production. Specifically, Seaside concedes: (1) that Rule 34 "control" reaches dispatch records held by an external communications center where the City has the legal right to obtain them on demand (*In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999)); (2) that state California Public Records Act ("CPRA") exemptions do not shield police records from federal civil-rights discovery (*Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995)); (3) that Rule 17(c) protects an incompetent plaintiff without halting discovery (*Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005); *Davis v. Walker*, 745 F.3d 1303 (9th Cir. 2014)); and (4) that phased production of incident-related recordings, final reports, and surveillance footage subject to privacy redactions is a workable framework (Dkt. 44 at 9–10). With the preliminary-injunction hearing set for December 10, 2026 (Dkt. 24), Seaside's effort to stall production of five discrete categories from a single arrest until after ordinary Rule 26(f) scheduling would deprive the Court

of the exact objective records — the 911 call, the CAD dispatch log, the CLETS query timestamps, and the body-worn-camera footage — that establish what Seaside officers knew at the moment they arrested A.B. on October 15, 2026.

## II. SEASIDE'S OWN CITATIONS EXPOSE THE DISPATCH SHELL GAME AND FORECLOSE ITS CPRA DEFENSES

### A. Seaside concedes Rule 34 control over county-held dispatch records (*In re Citric Acid*).

In its November 4, 2026 CPRA response, Seaside claimed it had "identified no responsive communications-center records within its possession or control" (Dkt. 23-2 at 2–3; Dkt. 44 at 3). Yesterday, the Monterey County Emergency Communications Department ("ECD") supplied the other half of that shell game, confirming in writing that ECD is the Public Safety Answering Point ("PSAP") holding the October 15, 2026 911 audio, CAD event log, and radio traffic for Seaside's responding units — while advising that its refusal was made "in consultation with the District Attorney's Office and County Counsel" and invoking Government Code §§ 7927.705 and 7923.600–7923.625. (Dkt. 40, Ex. 21 at 1–2.) In Docket No. 44, Seaside abandons its physical-possession dodge, citing Federal Rule of Civil Procedure 34(a)(1) and *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999), to admit that "Control includes the legal right to obtain documents on demand; physical possession is not the sole inquiry", and conceding that its prior CPRA statement "does not substitute for an appropriate inquiry into the City's possession, custody, or control" (Dkt. 44 at 8:17–23). Seaside dispatches its police units through ECD and queries state law-enforcement databases (CLETS/ERFS) as a participating agency; it indisputably possesses the legal right to obtain its own incident CAD logs, radio traffic, and query audit trails on demand.

### B. Seaside concedes that CPRA exemptions do not apply — and offered zero evidence of privilege.

Seaside further concedes that a public-records response is not "a blanket federal privilege determination", citing *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995), and *Kerr v. United States District Court*, 511 F.2d 192, 198 (9th Cir. 1975). (Dkt. 44 at 8:24–9:11.) Under

*Soto* and *Kerr*, state statutory exemptions (such as Cal. Gov. Code § 7923.600) do not govern federal § 1983 actions, and a municipality invoking the qualified official-information privilege must submit a formal declaration from a responsible official specifying the exact harm that disclosure would cause. Seaside submitted no declaration whatsoever — not from Chief Borges, not from Officer Zamudio, and not from any records custodian — relying instead on unsworn attorney argument. That failure is dispositive twice over. The burden rests on the party asserting a privilege to establish all of its elements, *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002), and the proponent must identify the specific materials withheld and the grounds supporting the privilege as to each, *id.* at 1000; blanket assertions are "extremely disfavored," *id.* (quoting *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992)). Seaside has identified nothing and supported nothing.

Nor may Seaside withhold selectively. Voluntary disclosure of privileged material to third parties generally destroys the privilege. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). Seaside has already made its selective disclosures — publicly vouching in opposition to the preliminary injunction that a written *Gerstein* determination validated the October 15 arrest (Dkt. 36 at 7) — while withholding the determination itself and every record that would test it. A party may not disclose the characterizations that help it and suppress the records that would prove or disprove them.

**C. A defendant may not assert the legality of an arrest in one brief while litigating in the next to ensure that nothing showing it reaches the Court.**

Seaside's two oppositions, read together, remove any doubt about the posture. In one, filed November 16, Seaside maintains that the October 15 arrest passed constitutional muster under a written *Gerstein* determination (Dkt. 36 at 7); in the other, filed November 17, it asks the Court to withhold the body-worn-camera recordings, dispatch records, investigative file, and CLETS order-status records that would show what its officers knew and checked — interposing privacy, privilege, and protective-order requirements and pointing to state public-records restrictions. (Dkt. 44 at 2–3, 8–9.) That wall has no place here. The discovery supports the pending preliminary-injunction motion, which rests on federal law — the Fourth and Fourteenth

Amendments and the Supreme Court's *Gerstein* line — and state disclosure statutes do not define the scope of federal civil discovery.

The posture approaches judicial estoppel. The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted), and exists to "protect the integrity of the judicial process," *id.* at 749–50. The Ninth Circuit weighs whether the later position is "clearly inconsistent" with the earlier, whether judicial acceptance would create "the perception that either the first or the second court was misled," and whether the inconsistency would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Those factors are not "inflexible prerequisites," *id.*, and each is in motion here — with the risk compounded because both phases are before the same Court. In the injunction phase Seaside asks the Court to credit that a written *Gerstein* determination validated the arrest; in the discovery phase it asks the Court to suppress the determination itself and every record that would corroborate or refute it. If the determination exists and says what Seaside claims, production vindicates Seaside. If it does not, the injunction record is complete. What Seaside may not do is prevail on the assertion while suppressing the proof.

**III. SEASIDE'S REPEATED MISSTATEMENT OF A.B.'S INCOMPETENCY ADJUDICATION CANNOT HALT DISCOVERY**

For the third time across its filings, Seaside's counsel asserts that A.B. "is an adult who, to the City's knowledge, has not been adjudicated incompetent" and is merely "an adult whose litigation capacity has been questioned" (Dkt. 44 at 1:25–26, 4:21–22; *see also* Dkt. 36 at 2, 5). That assertion is flatly refuted by the judicial records already on file: on February 5, 2026, the Monterey County Superior Court formally adjudicated A.B. incompetent to stand trial in Case No. 26CR000939 (Dept. 07), and no restoration order has ever been entered (Dkt. 7, Ex. 1; Dkt. 28, Ex. B; SAC, Dkt. 35, ¶¶ 20–22, 66–67). Appointed defense counsel Tara Higgins confirmed in writing on November 4, 2026 that the criminal proceedings remain suspended under Penal Code § 1368 and that A.B.'s CARE Act status is active. (Dkt. 35-3, Ex. U.)

The knowledge hedge on which the misstatement rests — "to the City's knowledge" (Dkt. 44 at 4:21–22) — deserves attention, because it is the only thing standing between Seaside's assertion and an outright falsehood, and it fails on three levels. *First*, the adjudication is a public judicial record of the very superior court sitting in the county where Seaside polices, and it has been part of this Court's docket since the original complaint (Dkt. 7, Ex. 1), reiterated with exhibits in support of the pending motions (Dkt. 28, Ex. B) and pleaded with particularity in the operative complaint (SAC, Dkt. 35, ¶¶ 20–22) — all before Seaside filed either of its oppositions (Dkt. 36; Dkt. 44). A litigant cannot plead ignorance of the contents of the very docket on which it litigates, and the Court may take judicial notice of the adjudication outright. Fed. R. Evid. 201. The hedge is not uncertainty; it is studied blindness. *Second*, a Penal Code § 1368 order is not a lingering "question[]" of capacity. It is a judicial determination that continues in force until a restoration order issues under section 1372, and no such order has ever been entered. The status follows the ward as a matter of law; it does not require re-adjudication in every forum where his rights are at stake.

*Third*, the "questioned" framing is parasitic. The only reason A.B.'s capacity has been "questioned" at all is that Plaintiffs disclosed the adjudication and requested a guardian ad litem. (Dkt. 17; Dkt. 37 at 4; Dkt. 42 at 11.) Seaside took that disclosure of a judicial fact, downgraded it to an open question, and now proposes to resolve the "question" against the ward — litigating the merits against him as though he were fully capacitated while withholding the evidence as though he were not before the Court at all.

Seaside's own authorities defeat its request to stall discovery pending Rule 17(c) mechanics. Seaside cites *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005), and *Davis v. Walker*, 745 F.3d 1303 (9th Cir. 2014), conceding that uncertainty concerning capacity does not "justify leaving A.B.'s interests unprotected" or "preclude[] all discovery" (Dkt. 44 at 5:1–19). Plaintiffs have already requested appointment of a guardian ad litem under Rule 17(c)(2) (Dkt. 17; Dkt. 37 at 4; Dkt. 42 at 11), and preserving evidentiary records before the December 10 hearing directly protects the ward's interests.

## IV. GOOD CAUSE EXISTS UNDER *APPLE* AND *SEMITOOL*: EACH REQUEST MAPS DIRECTLY TO THE DECEMBER 10 PRELIMINARY INJUNCTION

Seaside argues that Plaintiffs failed to tie the five requests to a specific issue in Docket No. 17 or to show why seven-day production is justified under *Apple Inc. v. Samsung Electronics Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011), and *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1100 (N.D. Cal. 2012). (Dkt. 44 at 2, 5–7.) Unlike the commercial patent and trademark disputes in those cases, Plaintiffs seek five narrow categories concerning a single arrest event, each directly dispositive of the Fourth Amendment verification and *Lyons* standing issues set for hearing on December 10, 2026:

> **Request C (911 audio and CAD event log):** proves that A.B. himself placed the 911 call as a battery victim and establishes the exact information relayed to Officer Zamudio before he arrived on scene. (SAC ¶ 55(c); Dkt. 40 at 3.)
>
> **Request E (CLETS/ERFS query logs and order-status records):** establishes with objective timestamps whether Officer Zamudio verified the status of any protective order before arresting A.B., or only after booking him at the Seaside police station — directly refuting or confirming Seaside's defense to the requested pre-arrest verification injunction. (Dkt. 17 at 3; Dkt. 42 at 4, 6; *see Beier v. City of Lewiston*, 354 F.3d 1058, 1065–69 (9th Cir. 2004).)
>
> **Requests A and B (body-worn camera and parking-lot surveillance footage):** capture the on-scene encounter, demonstrate whether any independent witness corroborated an assault, and record any post-arrest admissions by officers upon discovering that no active protective order existed. (SAC ¶ 55; Dkt. 42 at 4.)
>
> **Request D (investigative and arrest file):** establishes the stated probable-cause basis at booking and explains why no charges appeared on any public register for days following the October 15 arrest. (*County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); SAC ¶ 57.)

Nor is there undue burden on a seven-day clock. Seaside has been on actual written notice of this exact arrest since October 28–30, 2026 (Dkt. 35-3 at 3–4) and already located and

reviewed the file to issue its November 4 CPRA response (Dkt. 23-2). Under *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), expedited production within seven calendar days is routine where digital records are already identified and a preliminary-injunction hearing is imminent.

**V. CONCLUSION: ADOPTING SEASIDE'S OWN PHASED PRODUCTION FRAMEWORK ON A SEVEN-DAY SCHEDULE**

In Section IV.E of its opposition (Dkt. 44 at 9–10), Seaside abandons any categorical bar to discovery and proposes an eight-point phased production framework. Plaintiffs accept reasonable third-party privacy redactions (with unredacted originals preserved) and respectfully request that the Court enter an order directing Defendants City of Seaside and Chief Nicholas Borges, within seven (7) calendar days, to produce in native format with metadata intact:[1]

(1) all body-worn-camera recordings (Request A) and surrounding parking-lot surveillance footage within the City's possession, custody, or control (Request B) for the October 15, 2026 incident;

(2) the complete arrest and investigative file for the October 15, 2026 arrest of A.B. (Request D); and

(3) pursuant to Seaside's admitted Rule 34 control under *In re Citric Acid*, 191 F.3d at 1107, all CAD event logs, 911 audio, and radio traffic (Request C), and all CLETS/ERFS query logs showing the existence or status of any protective order involving A.B. on October 15, 2026 (Request E) — subject to a standard protective order and preservation of unredacted originals.

DATED: November 17, 2026

Respectfully submitted,

/s/ Terrance Walker

______________________________

Terrance Walker

Plaintiff, Pro Se; Next Friend & Statutory Supporter for A.B.

---

[1]Notably, Seaside's own Certificate of Service attests under penalty of perjury that counsel served the opposition on "November 16, 2026" — a day before the opposition itself was filed — in a declaration "Executed on November 17, 2026". (Dkt. 44-1 at 1–2.) The discrepancy underscores why objective, metadata-intact records, rather than counsel's representations, sworn or unsworn, are necessary here.